MERCHANDISE CENTER, INC., Tortola GP. LLC, and Wallpapers To Go, Inc., Appellants,

v.

WNS, INC., Appellee.

No. 06–01–00130–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 28, 2002.

Decided Aug. 9, 2002.

Rehearing Overruled Sept. 24, 2002.

Stephen J. Cavanaugh, Houston, for appellants.

C. Ed Harrell, Jr., Hughes, Watters & Askanase, Houston, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice GRANT.

Merchandise Center, Inc., Tortola GP. LLC, and Wallpapers To Go, Inc. appeal from piecemeal dismissals and a summary judgment, which disposed of their securities and contract lawsuits against WNS, Inc.

Two transactions are the primary bases for this lawsuit. First, Tortola purchased all the assets of Wallpapers To Go. Second, Merchandise Center then purchased the corporate stock of Wallpapers To Go from its parent company, WNS, Inc. The appellants allege that after the transactions, they discovered Wallpapers To Go was not in the financial condition appellants believed. They sued WNS in an attempt to recover the difference between what they purchased and what they believed they were purchasing.[1]

This lawsuit is convoluted in its facts because of the number of corporate entities involved and the piecemeal nature of the sales, and also because of the repetitive claims brought against WNS by those entities. The appeal is similarly convoluted because of the procedures used in disposing of the multiplicity of claims raised by the multiple parties. The item for sale was Wallpapers To Go, which was a corporation whose stock was wholly owned by WNS, Inc. This sale could have been structured as a simple sale of assets and stock to a company that had negotiated for the purchase—IDH, Inc. *which is not a party and which never appears again.* Instead, the president of IDH, Inc., Tony Martinez,[2] and an investor, Harold Otto,[3] formed three new companies—Merchandise Center, Inc., Tortola GP. LLC, and TNST, Inc. *(which is also not a party and never appears again).*[4] Wallpapers To Go sold its assets (and some liabilities) to Tortola. WNS thereafter sold the stock to Merchandise Center (the Stock Purchase Agreement and the Asset Purchase Agreement).

The Asset Purchase Agreement specified that some accounts payable stayed

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

1. At trial, because of the consolidation of the cases, WNS was positioned as the plaintiff, while Merchandise Center, Tortola, and Wallpapers To Go were named as defendants.

2. Martinez was also the president of Wallpapers To Go, and had been with that company for six years before the purchase.

3. Otto was the former president of WNS, and Martinez was the president of Wallpapers To Go.

4. TNST purchased six stores from Wallpapers To Go.

with the parent company, WNS, along with some other payables or items forgiven, while others went to Tortola, and also stated that all required taxes were current. WNS agreed to pay Wallpapers To Go $100,000 over a period of ten months.

According to appellants, WNS understated the amounts payable by a large amount and failed to pay $40,000 of the amount due on the note.

WNS filed an action seeking declaratory relief. Appellants Merchandise Center and Tortola filed a suit alleging violations of the Texas Securities Act, TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 2002), negligent misrepresentation, common-law fraud, breach of the Stock Purchase Agreement's indemnity provision, and (presumably breach of contract) for nonpayment of the note. The two cases were consolidated.

WNS filed a Motion to Dismiss. The trial court dismissed Tortola's Securities Act claims, the TEX. BUS. & COM.CODE ANN. § 27.01 claims, and breach of contract claims. The trial court also dismissed Merchandise Center's claim against WNS for breach of the Asset Purchase Agreement.

Tortola's actions against WNS under the Texas Securities Act and Section 27.01 of the Texas Business and Commerce Code were dismissed. Merchandise Center's claims against WNS for breach of the asset sale contract were dismissed. WNS was not a party to that contract (that contract was between Wallpapers To Go and Merchandise Center). A partial summary judgment was rendered for WNS, rendering a take-nothing judgment on all claims by Merchandise Center and Tortola. A take-nothing summary judgment was also rendered in favor of WNS against Wallpapers To Go. A Final Judgment disposing of cross-claims by WNS against Merchandise Center was signed on May 21, 2001. WNS thereafter filed a nonsuit of its counterclaims against Tortola and Wallpapers To Go.

The appellants have filed a forty-eight-page brief in which they attempt to raise and argue thirty issues. The appellants claim in the first group of "issues" the trial court erred when it granted the Motion to Dismiss.

In the second group of "issues," the appellants argue, on multiple grounds, that the summary judgments were improperly rendered as to each of the various appellants' causes of action.

The appellants argue in the third group of "issues" that the trial court erred by rendering attorney's fees and that the amount of the fees was excessive.

A separate contention is that the trial court erred by determining the indemnity provision in the contract was the sole remedy available to WNS.

## The Dismissals

We first address the contentions involving the trial court's dismissals. The proceedings that were dismissed were claims by Tortola involving the sale by WNS of the stock and claims by Merchandise Center for breach of the Asset Purchase Agreement. Neither of those parties were involved in those particular transactions. Tortola did not purchase stock and was not a party to the Stock Purchase Agreement, and Merchandise Center did not purchase assets and was not a party to the Asset Purchase Agreement. The possibility that either of these parties might have any actionable right in connection with those transactions is therefore extremely limited.

Procedurally, however, the case should have gone through at least one level of special exceptions and a ruling thereon before the trial court could properly dis-

miss the case. In that respect, this is remarkably similar to a case recently decided by this court. *See Texas–Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 142 (Tex. App.-Texarkana 2000, no pet.). In *Mecom,* we reviewed a situation where special exceptions were sought, but were not ruled on, and the trial court granted an order dismissing the case. In this case, special exceptions were sought, but not ruled on, and the trial court granted an order dismissing the case.

We discussed the nature of this type of situation at length in *Mecom.* In both *Mecom* and the present case, the procedure followed was similar to a motion for failure to dismiss for failure to state a cause of action.

> [T]he Federal Rules of Civil Procedure provide for a motion to dismiss for failure to state a cause of action, but the Texas Rules of Civil Procedure do not contain an analogous provision. *See* FED. R. CIV. P. 12(b)(6); *see also Fort Bend County v. Wilson,* 825 S.W.2d 251, 253 (Tex.App.-Houston [14th Dist.] 1992, no writ). In Texas, such a complaint is considered to be a general demurrer, which is prohibited by Rule 90. *See* TEX.R. CIV. P. 90; *see also Centennial Ins. Co. v. Comm. Union Ins. Cos.,* 803 S.W.2d 479, 482 (Tex.App.-Houston [14th Dist.] 1991, no writ). Under the Texas Rules of Civil Procedure, the proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *Tex. Dep't of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974). And, the trial court cannot dismiss the case at the same time it sustains special exceptions. *Friesenhahn v. Ryan,* 960 S.W.2d 656, 658–59 (Tex.1998). Once

special exceptions are sustained, the trial court must give the party against whom the exceptions are sustained an opportunity to amend before dismissing the case. *Id.*

. . . .

> In the present case, special exceptions were filed before the trial court ordered dismissal; however, there was no written order indicating that the court sustained the exceptions and subsequently provided Texas–Ohio with the opportunity to amend. The party asserting the special exceptions waives the exceptions if the record does not reflect that the party obtained a ruling thereon, *Smith v. Grace,* 919 S.W.2d 673, 678 (Tex.App.-Dallas 1996, writ denied); *R.I.O. Sys., Inc. v. Union Carbide Corp.,* 780 S.W.2d 489 (Tex.App.-Corpus Christi 1989, writ denied), and the ruling must be in the form of a written order.

*Mecom,* 28 S.W.3d at 141–42.

The record does not contain a written order on the special exceptions. Thus, the trial court erred if it dismissed appellants' claims on the pleadings for failure to state a cause of action without giving them an opportunity to amend.

WNS argues that the trial court's action was proper because under these pleadings, the particular appellants involved did not show they had standing to raise the claim. Although this may be correct, appellants did not have the opportunity to amend their pleadings to attempt to show they did, in fact, have standing to raise claims against WNS.[5]

Accordingly, even if either capacity or standing is dispositive, appellants were not provided with an opportunity to cure by an appropriate amendment. We also recognize that WNS counsel brought the trial

---

5. Although not a factor in our review, we also note appellants did, in a post-dismissal mo-

tion, ask the trial court to permit them to amend their pleadings, without avail.

court's failure to rule to its attention through motions reminding the court about its special exceptions. Nonetheless, the trial court did not rule. The trial court erred by dismissing the lawsuit without first granting the requested special exceptions and allowing an opportunity for amendment.

### The Summary Judgments

As a preliminary matter, WNS argues that appellants did not timely file responses to either their initial Motion for Partial Summary Judgment or their later Motion for Second Summary Judgment. Attempts were made to file both responses at the last possible moment, and as a result, we are confronted with several problems.

### The December Motion for Summary Judgment

The response to the December Motion for Summary Judgment was due to be filed no later than January 15, a date seven days before the hearing on the motion. Tex.R. Civ. P. 166a(c). The response was filed on January 16. It was one day late. However, January 15, 2001, was a national holiday, which had the effect of taking the last date for timely filing to the next business day, January 16. Tex.R. Civ. P. 4. As pointed out by the Texas Supreme Court, "Rule 4 could not be plainer: it applies to *any* period of time prescribed by the rules of procedure, and Rule 166a is one of those rules." *Lewis v. Blake*, 876 S.W.2d 314, 316 (Tex.1994). Thus, the response was timely filed.

However, that is not the end of the story. The record before this court contains an extensive assortment of documents labelled as an "APPENDIX TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT." That appendix contains a filemark of **January 23** a different (and later) date from the response—and the day *after* the judgment

was signed. The response itself references the appendix extensively. Stephen Cavanaugh, the attorney for appellants, has provided an affidavit, which is attached to his reply brief, in which he swears that he delivered it all bound together to the court and clerk and that he cannot imagine how the appendix received a different date than did the response.

The problem is this: facts outside the record cannot be made part of the record. It is elementary that, with limited exceptions not material here, an appellate court may not consider matters outside the appellate record. *Sabine Offshore Serv., Inc. v. City of Port Arthur,* 595 S.W.2d 840 (Tex.1979); *Perry v. Kroger Stores, Store No. 119,* 741 S.W.2d 533 (Tex.App.-Dallas 1987, no writ). The record consists of the clerk's record, and where appropriate, a reporter's record. Tex.R.App. P. 34.1. Materials outside the record, i.e., materials not filed with the district clerk as part of the record of the case, that are improperly included in or attached to a party's brief may be stricken and may not be considered by an appellate court in its review of the appeal on its merits. *Till v. Thomas,* 10 S.W.3d 730 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498, 501 (Tex. App.-Austin 1991, writ denied).

The record before this court shows that the response was timely filed and that the supporting evidence was not. Counsel's affidavit may not be considered by this court, and counsel has made no effort to take any other action regarding the record.

Summary judgment evidence may be filed late, but only with leave of court. Tex.R. Civ. P. 166a(c). There is no order in this record granting leave to file the summary judgment proof late, and thus it was not properly before the trial court on

the motions for summary judgment. *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996); *see INA of Tex. v. Bryant,* 686 S.W.2d 614, 615 (Tex.1985) (where nothing appears of record to indicate that late filing of summary judgment response was with leave of court, it is presumed that trial court did not consider the response). Our review of the first response to the motion for summary judgment will thus be made without the benefit of any summary judgment evidence.

### The Second Motion for "Final" Summary Judgment

WNS also takes the position that appellants' response (and attached evidence) to its Second Motion for Summary Judgment was untimely because it was not filed until May 15, 2001, six days before the summary judgment hearing.

Appellants argue that the document was timely filed because it was timely mailed pursuant to Tex.R. Civ. P. 5 and received no later than ten days thereafter. No copy of an envelope appears in the record, and the document itself does not internally indicate it was mailed to the district clerk.[6] The filemark itself, however, indicates that it was received by the "mail processing deputy" of the district clerk's office. The record shows that the document was received by mail, one day late.

We feel confident in concluding the document must have been mailed at least one day before its receipt by the district clerk. If more than one day had been involved, we might well not reach the same conclusion based on this type of nonspecific information. This highlights a weakness in the system that can be of critical importance in an attempt to appeal. If a document is mailed so late that it is not received timely and counsel seeks the safe harbor of the mailbox rule, counsel must ensure the appellate record contains information to allow us to determine when the item was placed in the mail. Tex.R.App. P. 9.2(b).

We conclude the response was timely filed and will consider it in our review.

### The First Partial Summary Judgment

The two partial take-nothing summary judgments signed on January 22 and February 6, 2001, respectively, are generic judgments which do not specify in any respect the grounds on which judgment was rendered. The motion seeks relief under both the standard and no-evidence summary judgment rules.

### Causes of Action

Appellants sought to recover based on fraud, statutory fraud, and negligent misrepresentation, violations of the Texas Securities Act, and breach of the stock purchase contract.

### No–Evidence Summary Judgment

A no-evidence summary judgment shifts the burden to the nonmovant to present enough evidence to be entitled to a trial. Tex.R. Civ. P. 166a(i). If the nonmovant is unable to provide some evidence, then the trial court must grant the motion. *Id.* Once properly raised, Rule 166a(i) employs a no-evidence standard and places the burden on the nonmovant to produce evidence on each and every challenged element of his claim. *Heiser v. Eckerd Corp.,* 983 S.W.2d 313, 316 (Tex. App.-Fort Worth 1998, no pet.). Thus, a no-evidence summary judgment is improperly granted if the respondent counters with more than a scintilla of probative evidence to raise a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(i); *Isbell v. Ryan,* 983 S.W.2d 335, 338 (Tex.App.-

---

**6.** There is a notation on the document that it was "served by fax" on opposing counsel on May 11.

Houston [14th Dist.] 1998, no pet.); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.).

WNS filed a proper no-evidence Motion for Summary Judgment in which it specified the elements of each of the above-listed causes of action and stated it was entitled to judgment because there was no evidence to support those claims. It was therefore appellants' burden to provide some evidence of each specified element in order to avoid summary judgment. Appellants provided no evidence which could be considered by the trial court. Accordingly, the trial court did not err by rendering a no-evidence summary judgment.

## THE FINAL SUMMARY JUDGMENT

### Standard of Review—Summary Judgment

■■ The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986) (per curiam). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979).

■ The final summary judgment provides a recovery for WNS on its claims for storage fees of $13,261.12, plus $1,460 attorney's fees for that claim, and a separate award of attorney's fees if $116,051 for the prosecution of the declaratory judgment, all payable by Merchandise Center, Inc. Contingent awards of attorney's fees were also made for various levels of appeals. A timely response and two affidavits were filed by appellants in response to this Motion for Summary Judgment.

The storage charges were for documents of Wallpapers To Go, which were stored by WNS under the terms of the Stock Purchase Agreement, which required WNS to deliver records and Merchandise Center to retain those records for ten years.

WNS had documents in storage. The contract required WNS to deliver the documents to Merchandise Center. WNS did not deliver them to a different location, but told Merchandise Center where they were and "tendered" the documents to them at that site. Merchandise Center did not move the documents and declined to pay the bills for storage, and now claims it does not owe the storage fees because the documents were never "delivered." Approximately twenty-nine months elapsed without any payment from Merchandise Center, and the judgment is for that amount, which is approximately $475 per month.

Harold Otto's affidavit is attached to the Response to the Motion for Summary Judgment. He swears that Merchandise Center had agreed to pay for storage through December 1997 only, after which the documents were to be delivered to Dallas at the expense of WNS, Inc. That does not appear in a contract, and the basis for this agreement is not referenced by the affidavit. The affidavit itself is also not in standard form, because Otto swore, "I am personally acquainted with the facts stated herein," rather than the normal "personal knowledge" language. WNS complained about this to the trial court, and also on appeal, as being inadequate to meet the requirements of an affidavit. We find that the different terminology is nothing more than an exercise in semantics and

that Otto was equally as bound by the language used as he would have been by the more typical "personal knowledge" recitation.

This constitutes some evidence controverting WNS's claim for storage fees. Summary judgment was therefore improperly rendered on this claim.

## Attorney's Fees

■ Attorney's fees in this case were sought and awarded under the declaratory judgment statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.001, et seq. (Vernon 1997 & Supp.2002). What constitutes reasonable attorney's fees is a question of fact, but clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law, especially when the opposing party has not rebutted the evidence. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881–82 (Tex. 1990); *Grace v. Duke*, 54 S.W.3d 338, 344 (Tex.App.-Austin 2001, no pet.). In this case, the major award of attorney's fees to WNS was $116,051 for the prosecution of the declaratory judgment, payable by Merchandise Center. A separate award of $1,460 in attorney's fees, also payable by Merchandise Center was also made specifically in connection with a separate claim for storage fees. Contingent awards of attorney's fees were also made for various levels of appeals.

In this case, WNS's counsel provided extremely detailed billing statements to justify WNS's claim for attorney's fees. WNS argued that the only reason this lawsuit had become so complex and unwieldy was because appellants had brought in subsidiary parties that had no justiciable interest in the case, but all of which required legal work in response, and that the multiple claims raised by appellants were all directed at the same relatively simple action: seeking a legal determination of their respective rights under the contract. Thus, WNS concludes, the matters involved were so intertwined as to be inseparable, and attorney's fees for each issue could not be adequately segregated.

In response, appellants filed an affidavit stating the matters could be segregated. Appellants agree that the original declaratory judgment action was much simpler and argue that the only reasonable attorney's fees for that action would be about $2,500 for the cost of a single pleading and hearing (affidavit of appellant's counsel, Stephen Cavanaugh).

Based on this state of the record, appellants contend that there is controverting evidence and that summary judgment was improper on this point. We have recently addressed a similar argument in *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 338 (Tex.App.-Texarkana 1999, no pet.). In that case, we concluded that where the nonmovant produced a contravening affidavit regarding fees, it created an issue of fact regarding the reasonableness of the fees that precluded the granting of summary judgment under TEX.R. CIV. P. 166a(c). *See Gen. Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 601 (Tex.App.-Houston [1st Dist.] 1993, no writ).

Similarly, the court in the *General Electric* case holds that a summary judgment award of attorney's fees is improper when the nonmovant produces a controverting affidavit on reasonable attorney's fees. To constitute proper summary judgment evidence under Rule 166a(f), an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence. *Fisher v. Yates*, 953 S.W.2d 370, 383 (Tex. App.-Texarkana 1997), *writ denied*, 988 S.W.2d 730 (Tex.1998) (per curiam). The allegations must be direct, unequivocal, and such that perjury is assignable. *Id.*

Here, Cavanaugh swore by affidavit that he practices in the Houston area and is familiar with the legal services necessary to handle claims of the type involved in this case and that applying his knowledge of the time and labor involved, difficulty of the issues presented, the skills requisite to properly conduct the case, customary charges of the bar, and awards in similar cases, he is of the opinion that a reasonable fee would be $2,500 for prosecuting the declaratory judgment to conclusion.

■ The Declaratory Judgment Act provides that the trial court may award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. The decision to grant or deny attorney's fees is within the trial court's sound discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex. 1985).[7]

■ The determination of reasonable attorney's fees is a question for the trier of fact. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11, 12 (Tex.1991). However, if attorney's fees are authorized for some, but not all, of a party's claims, that party generally has the duty to segregate the recoverable attorney's fees from the unrecoverable attorney's fees. *Id.* at 11. This general rule is subject to an exception. A party is not required to segregate attorney's fees incurred in litigating different claims if the claims involved the same set of facts or circumstances and are "intertwined to the point of being inseparable." *Id.* In a situation in which a party's prosecution or defense involves proof or denial of essentially the same facts, the party is entitled to recover the entire amount covering all claims, subject only to the requirement that the attorney's fees be

reasonably and necessarily incurred as well as equitable and just. *Id.; Gage Van Horn & Assocs., Inc. v. Tatom,* 26 S.W.3d 730, 734 (Tex.App.-Eastland 2000, no writ). This concept applies to declaratory judgment actions that are inextricably intertwined with other claims based on the same facts or situations. *Duncan Land & Exp., Inc. v. Littlepage,* 984 S.W.2d 318, 333 (Tex.App.-Fort Worth 1998, pet. denied); *City of Bridge City v. State ex rel. City of Port Arthur,* 792 S.W.2d 217, 228 (Tex.App.-Beaumont 1990, writ denied).

In this case, appellants do not contend that the total amount of the fees was unreasonable for the prosecution of the entire case, but instead argue that fees should have been available only for one small portion of the lawsuit because the other matters involved were not sufficiently intertwined as to entitle WNS to recover the entire amount and that WNS was thus required to segregate its fees among the different actions. The question of whether all of the actions are so intertwined as to allow recovery of fees for defending the entirety of the lawsuit is a preliminary question that must be answered by the court before the fact-finder can determine whether the fees are reasonable. *See Sterling,* 822 S.W.2d at 11. As noted above, such a determination is based on the nature of the claims raised and the facts or circumstances addressed by those claims.

■ We have reviewed the assortment of claims brought by Merchandise Center and Tortola against WNS, and we agree with the trial court that the multiple actions involved in this case that were disposed of by the summary judgment are indeed so intertwined with the original declaratory judgment action that the attor-

---

7. Any fees granted must be reasonable and necessary, which are questions of fact, as well as equitable and just, which are questions of law. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998).

ney's fees incurred in the suit cannot be segregated.

The parties never took the position that the issues and facts concerning the storage of the records were intertwined, as is directly shown by the fact that a separate award of attorney's fees was made on that matter. It is obvious that the storage fee issue is entirely separate from the issues that have been otherwise raised by appellants in this case, and it was so treated by the parties. When an error affects part of, but not all of, the matter in controversy and that part is separable, we are required to order a new trial only as to the part affected by the error. Tex.R.App. P. 44.1(b). We have concluded that we must sever that issue from the main body of this proceeding, and we therefore likewise reverse the attorney's fees award related to the storage fees.

A remaining question is whether we must sever the attorney's fees award made in the summary judgment and remand that matter for a new trial.

The critical question in reviewing the award of attorney's fees in the summary judgment is whether the award of those fees should be remanded because they include fees from the dismissals, which we are remanding to the trial court. As set out above, the first question is whether the facts and circumstances were the same in both the suit subject to the present appeal and in the claims which were dismissed. The claims in the dismissed suits were mirror images of the claims which are addressed in this appeal—but raised by different parties against the same defendant. WNS's defense involved denial of not only "essentially" the same facts, but involved denial of *exactly* the same facts. The work done by WNS's counsel in responding to the claims that were dismissed (up to the point that WNS's counsel sought

dismissal) was not simply similar to other work done: it was the same work.

It does not follow that the fees charged for obtaining the dismissal itself could not have been divided out from those charged for the legal work preceding that action. Those particular fees for the dismissal motions were probably quite minimal in comparison to the fees awarded for the defense of the claims. They could also probably have been separated, and on request, should have been.

However, appellants have not sought that relief from this court. By failing to present a point or argument, an appellant waives the right to complain of the error. The court of appeals will err if it reverses on that ground in the absence of properly assigned error. *Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998); *Vawter v. Garvey,* 786 S.W.2d 263 (Tex. 1990); *Allright, Inc. v. Pearson,* 735 S.W.2d 240 (Tex.1987). We, therefore, may not raise that claim on their behalf. Appellants have asked this court to find that the trial court erred by failing to segregate the fees related to the declaratory judgment from all other fees. We agree with the trial court that the fees charged in pursuing the various actions cannot be effectively segregated. Accordingly, we cannot grant the relief sought by appellants.

We affirm the summary judgment taken in favor of WNS, except that we reverse the award of storage fees and reverse the award to WNS of $1,460 in attorney's fees related to the storage fees claim. We reverse the trial court's dismissal of the actions by Tortola and Merchandise Center. The case is remanded to the trial court for further proceedings consistent with this opinion.