IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00361-CV

 

In the
Matter of the Marriage of

Sylvester
 Anderson

and

Diona
Marie Anderson

 

and

 

in the
Interest of S.E.A. and B.T.W.A., Children

 

 



From the 378th District Court

Ellis County, Texas

Trial Court No. 69,730-D

 



Dissenting  Opinion










 

            Sylvester and Diona Anderson were
married in 1982 while they were members of the United States Marine Corps. 
They signed a post-nuptial agreement in 1984.  A judgment of divorce was signed
in 2006, ending their marriage of almost 24 years.  Because the parties have
not shown that the trial court erred in dividing the parties’ retirement
benefits or in finding Sylvester to be underemployed, the judgment should be
affirmed.

Post-Nuptial Agreement[1]

            Sylvester argues in his first issue
that the trial court improperly interpreted the parties’ post-nuptial agreement
and erred in awarding a one-half interest in Sylvester’s retirement income to
Diona.  The agreement is made up of twenty sections.  Section II of the
agreement, Division of Community Property, contains five subsections. 
Subsection (a) contains a list of property that Diona agreed to transfer to
Sylvester as his sole and separate property in the event the parties separate
pending dissolution of their marriage.  Subsection (b) contains a list of
property that Sylvester agreed to transfer to Diona as her sole and separate
property in the event the parties separate pending dissolution of their
marriage.  Subsection (c) provides for a division of any other property not
divided by subsections (a) and (b) and provides for a division of a house if
one is owned by the parties at the time of separation.  Subsection (e) provides
that separate property at the time of marriage remains separate, including
specific real property in Mississippi.  Subsection (d), the specific provision
of the agreement interpreted by the trial court, provides as follows:

d.  Husband is a Sergeant and the Wife is a
Corporal in the U.S. Marine Corps and their active service for purposes of
retirement began on December 28, 1977 for the Husband and February 4, 1982 for
the Wife.  The parties have agreed that they do expressly waive all rights they
may have in and to said retirements.

 

            The agreement provides that it will be
construed under the laws of the State of California.  Neither party has argued
that there is a difference between California and Texas law.  Neither party has
argued that the agreement in general or any provision of the agreement is
unenforceable as being in violation of the law except as discussed in Diona’s
cross point discussed below.

            The trial court made findings of fact
and conclusions of law, including two findings regarding the post-nuptial
agreement and the division of the parties’ retirement benefits.  The trial
court found that the “parties entered into a pre [sic] nuptial agreement which
was received into evidence by the Court but did not dispose of the parties[‘]
retirement account.”  It also found that the agreement “did not sufficiently
separate the retirement benefits and the parties should each be awarded 50% of
the retirement benefits earned by either of them during the marriage.”  At the
time of the divorce, Diona was not receiving military retirement benefits.  

            In construing a written contract such
as this post-nuptial agreement, the courts must ascertain the true intentions
of the parties as expressed in the instrument.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  Courts should examine and consider the entire
writing in an effort to harmonize and give effect to all the provisions of the
agreement so that none will be rendered meaningless.  Id.  No single
provision taken alone will be given controlling effect; rather, all the
provisions must be considered with reference to the whole instrument.  Id.  If the written instrument is so worded that it can be given a certain or
definite legal meaning or interpretation, then it is not ambiguous and the
court will construe the writing as a matter of law.  Id.  A contract,
however, is ambiguous when its meaning is uncertain and doubtful or it is
reasonably susceptible to more than one meaning.  Id.  Whether a
contract is ambiguous is a question of law that must be decided by looking at
the contract as a whole in light of the circumstances present when the contract
was entered.  Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996); Id. at 394.

            Neither party mentioned or presented
any evidence regarding the division of the retirement benefits at trial.  After
the presentation of evidence, the trial court raised a question about the
ambiguity of section II(d).  Even after a new trial was granted, the parties
did not present evidence regarding the division of the retirement benefits. 
The only complaint on appeal about the division of the benefits is that the
division is not in compliance with section II(d) of the post-nuptial
agreement.  After reading the agreement as a whole, there are three initial or
primary interpretations of subsection (d).  First, it may mean that the parties
waived all their interest in both of their retirement benefits, in effect
giving it back to the government.[2] 
Second, it may mean that the parties agreed to waive their interest in their
own benefits and give the other party all of their interest in their own
retirement benefits.[3] 
Third, it may mean that the parties each agreed to waive their interest in the
other party’s retirement benefits.  

            But it is in the trial court’s effort
to implement the most likely of these meanings that the real ambiguity of the
provision rears its ugly head.  There are temporal, or timing, problems as well
as character issues with these interpretations.  Specifically, when did the
parties mean to waive their interest?  Is the waiver effective as of the date
of the agreement?  Is the waiver effective as of the date of separation?  Is
the waiver effective as of the date of the divorce?  It reads as a current
waiver, unlike the other provisions of the agreement that specifically state
the effective date—separation.  Further, what interest did the parties waive? 
Did they waive the community property portion between the date of marriage and
any of the three dates mentioned above (agreement – separation – divorce)?  Did
they waive the claim to a separate property portion that accrued prior to their
marriage?  Or, did they waive everything they owned on the date of the
agreement?

            At some point an agreement becomes so
indefinite or lacking in clarity as to be unenforceable.  I believe this is
such an instance.  If the parties had intended to transfer, or require a future
transfer, to the other of all their community interest in the other party’s
retirement account, it would have been a simple matter to list this asset under
section II(a) and (b) of the agreement.  They did not.  We cannot write the
agreement for them.

            The trial court did not err in
awarding one half of the retirement benefits earned by the parties to each
other.  Sylvester’s first issue should be overruled.

Underemployment

            In his second issue, Sylvester
contends the trial court improperly set child support above the statutory
guidelines based on an erroneous finding that Sylvester was underemployed.  The
trial court set child support at $450 per month based, in part, “on the
earnings that Sylvester…has the potential of earning if he were not
intentionally underemployed….”

            A trial court may order a parent to
pay child support beyond the amount the parent's income would ordinarily
indicate under the guidelines if the parent could potentially earn more money
but has intentionally chosen not to.  Garner v. Garner, 200 S.W.3d 303,
306 (Tex. App.—Dallas 2006, no pet.); Tex.
Fam. Code Ann. § 154.066 (Vernon 2002).  A child support obligor
qualified to obtain gainful employment may not avoid his support obligation by
voluntarily remaining unemployed or underemployed.  Id.  

            For the trial court to make a finding
of intentional underemployment or unemployment, there must be evidence the
parent reduced his income for the purpose of decreasing his child support
payment.  Id. at 306-307.  The requisite intent, or lack thereof, to be
underemployed or unemployed for the purpose of determining a child support
award may be inferred from such circumstances as the parent's education,
economic adversities, business reversals, business background, and earning potential. 
 Id. at 307.

            The first decree signed by the trial
court on March 2, 2006 set the child support at $600 per month.  A new trial
was granted on the issues of visitation and support and another hearing was
held.  The trial court signed a new final decree on August 14, 2006, setting
the child support at $450 per month.  There was evidence that, after separation
but before the first decree, Sylvester showed Diona $50,000 that he had from
the sale of old cars that he had rebuilt.  After the first decree, Sylvester
sold two cars for $2,400.  At the first hearing, Sylvester testified that he
was 60% disabled due to neck injuries he received while on the power lifting
team in the Marines.  He worked for Greyhound after leaving the Marines but
lifting luggage aggravated his injuries.  He made $2,500 a month while working
for Greyhound.  At the second hearing, Sylvester testified that he was 70%
disabled.  Also after the first decree, Sylvester decided to enroll in a local
community college.  

            After reviewing the record, there is
evidence Sylvester reduced his income for the purpose of decreasing his child
support payment.  The trial court did not err in finding Sylvester to be
underemployed.  Sylvester’s second issue should be overruled.

Diona’s Cross-Points

            Diona brings two cross-points on
appeal.  She did not file a separate notice of appeal.  First she complains
that Sylvester is precluded from attacking the divorce decree because he was
remarried prior to the rendition of the June 6th final decree.  There is no
evidence in the record before us that Sylvester had remarried.[4] 
Her first cross-point is overruled.  

            Second, Diona complains that the
post-nuptial agreement is invalid because Sylvester cannot prove that Diona had
independent legal counsel before signing the agreement.  In a memorandum of law
submitted to the trial court after the hearing but prior to the court’s signing
of the first decree, Diona suggested that the post-nuptial agreement was
invalid and asked the court to declare the agreement void.  No order was
rendered regarding this memorandum.  The decree was then signed, and only
Sylvester filed a motion for new trial.  Diona did not.  The validity of the
post-nuptial agreement was not raised at the hearing on new trial.  Now, Diona
wants only the retirement provision struck.  Diona did not re-urge her initial
argument to the trial court after a new trial was granted and did not make this
particular argument to the trial court.  She has not preserved this issue for
our review, and it is overruled.[5]  Tex. R. App. P. 33.1.

Divorce and Property
Division Generally

            When, as here, the parties leave the
trial court with little or no guidance, much less evidence, regarding the
marital estate, I am very reluctant to disturb the trial court’s judgment.  As
explained above, neither party attempted to assist the trial court in resolving
the meaning of the provision.  The Court thinks it knows what the provision
means but does not attempt to address the various meanings that could be
attributed to the provision when the temporal issues are overlaid onto the text
of the provision.

            Further, the trial court must make
some division of the community estate.  When the parties do not empower the
trial court with information about that estate and the value thereof, I cannot
be critical of a trial court that did what had to be done, divide the estate
and determine child support, based on the information provided by the parties.

            Likewise, I cannot be critical of the
parties or their lawyers.  On limited resources there is only so much research
of the law and the facts that the parties can afford.  Frequently, the divorce
and just and right divisions of the marital estates of marriages with smaller
total assets have the more significant legal issues.  The parties, however,
cannot afford to have the lawyer research every legal issue or present evidence
of the value of every asset, as well as prove the marital property character
thereof.

            For all these reasons, the trial court
is necessarily empowered with a tremendous amount of discretion in the division
of the property of the parties.  This is not an appeal in which I believe the
parties have shown an abuse of that discretion.

Conclusion

            Having overruled all issues presented
on appeal, the trial court’s judgment should be affirmed.  Because it is not, I
dissent.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Dissenting
opinion delivered and filed November 14, 2007









[1] I
pause to note the seeming inconsistency in that the Court first analyzes the
validity and the meaning of the agreement under Texas law.  It then analyzes
the enforceability of the agreement under California law.  Maj. Op. at pg 5. 
(“By its own terms, the agreement is governed by California law.”).





[2] This
is actually what the literal words of the agreement say.  I am willing to look
for other meanings because that, alone, would appear to most people to be an
absurd result.

 





[3] This
may initially appear almost as absurd as the first, but due to the question of
what interest is being waived, community property or separate property
character and the question of when that interest was being waived, as will be
more fully discussed below, this is not so likely to lead to an absurd result. 
It is certainly no more absurd than either of them giving up all their interest
to which they would be entitled as a portion of the community retirement
benefits.  





[4]
Diona attaches evidence to her brief; but we do not consider any evidence
attached to a brief that was not included in the official record.  See Merch.
Ctr., Inc. v. WNS, Inc., 85 S.W.3d 389, 394 (Tex. App.—Texarkana  2002, no
pet.).

 





[5] It
could be argued that by this cross-point Diona is seeking a more favorable
judgment than she obtained at trial.  We, however, believe the effect of her
cross-point is the same as the trial court’s determination that the military
retirement benefits were not divided by the post-nuptial agreement and could,
therefore, be divided in the just and right division of the property.  For this
reason, Diona was not required to file a separate notice of appeal to give us
jurisdiction to consider this issue.  See Tex. R. App. P. 25.1(c).