**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――

## NO. 01-15-00604-CV

―――――――――――

**D&R CONSTRUCTORS, INC., MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING, AND FLORENCE RUSHING, Appellants**

**V.**

**TEXAS GULF ENERGY, INC., CS BANKERS V, LLC, TEXAS GULF FABRICATORS, LLC, TIMOTHY CONNOLLY, BRIAN G. HENDRY, AND LESTER H. SMITH, Appellees**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-00543**

---

## MEMORANDUM OPINION

Appellants, D&R Constructors, Inc. ("D&R") and Michael Rushing,

Stephanie Rushing, Penn Rushing, and Florence Rushing (collectively,

"the Rushings"), challenge the trial court's judgment, entered after the trial court granted a series of summary judgments, in favor of appellees, Texas Gulf Energy, Inc. ("TGE"), and CS Bankers V, LLC ("CSB"), on their declaratory-judgment actions against D&R and the Rushings. D&R and the Rushings further challenge the trial court's judgment entered against them on their various counterclaims against appellees, TGE, CSB, Texas Gulf Fabricators, LLC ("TGF"), Timothy Connolly ("Connolly"), Brian G. Hendry ("Hendry"), and Lester H. Smith ("Smith"). In seven issues, D&R and the Rushings contend that the trial court erred in granting summary judgment in favor of TGE and CSB on their declaratory-judgment actions; granting summary judgment against D&R and the Rushings on their counterclaims against CSB for wrongful foreclosure, TGF and Hendry to quiet title, TGE, TGF, and Connolly for breach of contract, CSB, TGE, TGF, and Connolly for quantum meruit, CSB, TGE, TGF, and Connolly for fraud, TGE, TGF, and Connolly for negligent misrepresentation, TGE, Connolly, and Hendry for tortious interference, TGE, TGF, and Connolly for breach of fiduciary duty, CSB, TGE, TGF, and Connolly for conversion, and CSB, TGE, TGF, and Connolly for conspiracy; granting relief beyond that requested in the summary-judgment motions; granting summary judgment without an adequate time for discovery; granting TGE and CSB summary judgment on their claims for attorney's fees; and granting Smith's motion for sanctions.

2

We affirm.

## Background

In their first amended petition, TGE and CSB[1] alleged that in the summer of 2012, TGE, needing additional space to conduct its fabrication operations,[2] was interested in acquiring a fabrication facility at 6314 Wade Road, Baytown, Texas (the "property"), which was owned by D&R, a fabrication company owned by the Rushings. At the time, D&R, carrying a $600,000 tax debt, was in default on a 2004 "Revolving Real Estate Lien Note," which was held by Comerica Bank ("Comerica")[3] and secured by a deed of trust on the property.

On July 11, 2012, TGE and the Rushings executed a "Letter of Intent" (the "LOI"), in which they contemplated a joint venture to develop a new fabrication and manufacturing company, Texas Gulf Fabrication, Inc.,[4] as follows:

1.   [TGE] and the Rushing Family agree to form a Marketing Joint Venture to develop new Fabrication and Manufacturing business for Texas Gulf Fabrication, Inc. The ownership of the Joint Venture will be 81% owned by the Rushing Family, . . . [and] 19% owned by [TGE].

2.   [TGE] will deposit $100,000 on the execution of the definitive agreement, 10 days from [the] effective date. These funds are intended for the benefit of the Rushing Family . . . .

---

[1]   CSB is an affiliate of TGE.

[2]   *E.g.*, pipe and vessel fabrication for the oil and gas industry.

[3]   Comerica Bank is not a party to this appeal.

[4]   Texas Gulf Fabrication, Inc. is an entity separate and distinct from appellee, Texas Gulf Fabricators, LLC ("TGF").

3. [TGE] will deposit $10,000 per month beginning August 2, 2012 and continue for twelve months, on or about the first of each month, ending with the check on July 2, 2013. . . .

4. [TGE] will issue 5,000,000 of its common shares in the name of the Joint Venture. . . .

5. There will be a 2% Commission paid to the Joint Venture for assistance in developing new business[.] [I]t will be calculated as a product of 2% of gross revenue invoiced by clients attributed to the efforts of the Joint Venture during the first five years from date of inception. It is intended that these funds are for the benefit of the Rushing Family.

. . . .

7. The Managing Board of the Joint Venture will consist of three members, appointed for two year terms, two from the Rushing Family, and one member appointed by the CEO of [TGE]. . . .

8. This agreement will be further refined into [a] comprehensive agreement, fully compliant with laws and regulations, and the Managing Board of the Joint Venture will authorize [its] managing member to execute the comprehensive agreement on behalf of the Joint Venture.

Michael Rushing, on behalf of the Rushings, David Mathews, CEO of TGE, and Craig Crawford, executive vice president of TGE, executed the LOI with the word "binding," handwritten in and initialed, next to the title, "Letter of Intent."

On July 13, 2012, CSB, through a Loan Sale Agreement ("LSA"), purchased from Comerica D&R's defaulted note on the property. Comerica assigned the note, deed of trust, rents, and security agreement to CSB. And the president of D&R, Penn Rushing, executed a "Joinder of Debtor," expressly consenting to the LSA. The appended Joinder to the LSA states,

4

For purposes of inducing Purchaser [CSB] and Seller [Comerica] to enter into this Agreement, which results in a direct economic benefit to the undersigned Debtor [D&R], . . . [D&R] joins in the execution of this Agreement . . . (a) to evidence [its] consent to the transaction . . . (b) to confirm that (i) true and correct copies of the Loan Documents are attached . . . [and] (ii) none of the terms or provisions of the Loan Documents have been modified. . . ."

The Joinder further states that D&R "confirm[s]" that the loan matured on October 28, 2011 and the "Loan Documents are valid and enforceable against [D&R] and the collateral identified therein, prior to Closing, as well as post Closing upon their assignment to Purchaser [CSB]." And D&R acknowledged that "Purchaser [CSB] and Seller [Comerica] . . . would not consummate the sale without [D&R's] Joinder in this Agreement."

TGE and CSB further alleged, however, that after execution of the LOI and LSA, "certain members of the Rushing Family absolutely and unconditionally refused to take any steps in furtherance of the joint venture until they received money above and beyond what [was] contemplated in the LOI." Thus, the parties reached an impasse and did not execute a final agreement.

On September 4, 2012, CSB foreclosed on the note and acquired the property at a trustee's sale. CSB's acquisition, pursuant to the deed of trust, included:

All buildings and improvements located thereon and all goods, equipment, fixtures, inventory, machinery, furniture, furnishings and other personal property that is now owned or hereafter acquired by Grantors and now or hereafter affixed to, or located on, the above

5

described real estate [the property] and used or usable for any present or future operation of any building or buildings now or hereafter located on said land . . . .

In late December 2012, CSB changed the locks on the property. Days later, a CSB security officer at the facility saw Michael Rushing at the property loading equipment and boxes into trucks. According to TGE and CSB, Michael removed "approximately $50,000 to $100,000 in equipment, machinery and Property belonging to [CSB]." TGE later obtained a temporary injunction, in which the trial court ordered that the Rushings return the property. And "[a]lthough the Rushings subsequently returned the majority of the equipment pursuant to [the trial court's] order," TGE and CSB suffered damages.

TGE and CSB sued the Rushings for conversion, alleging loss of use, loss of value, and lost profits. TGE also sought a declaration that the LOI was "not a binding, valid or enforceable agreement between TGE and the Rushing Family," "TGE [had] no obligation, monetary or otherwise, to the Rushing Family," and "any and all amounts paid by TGE to the Rushing Family [had to] be returned to TGE." Alternatively, TGE alleged that, to the extent the trial court found that the LOI was a "binding and enforceable agreement between TGE and the Rushing family," the Rushings had breached the agreement. CSB sought a declaration that

its foreclosure on the property was proper and valid and it, thus, held legal title to the property. TGE and CSB also sought attorney's fees.[5]

D&R and the Rushings answered, generally denying the allegations and asserting several counterclaims, in which they sought $12,500,000 in damages. In their "Third Amended [Counterclaims]," D&R and the Rushings alleged that in 2012, Mathews, Crawford, and Connolly, who was an executive of TGE and CSB, approached them about a joint venture with TGE, stating that they had an "exorbitant amount of business" and financial support.[6] And, in May 2012, Mathews, Connolly, Hendry,[7] and Smith[8] attended a meeting at Smith's house "to discuss dealings with the Rushings."

On July 11, 2012, D&R and the Rushings executed the "binding" LOI, in which TGE had "promised" the "purchase and subsequent dissolution of the debt" that D&R owed to Comerica on the property. According to D&R and the Rushings, TGE had "promised" that it "and/or Texas Gulf Fabrication, Inc. [the new venture] would purchase the debt and subsequently forgive it as part of their contribution/obligations to their venture." They asserted that the lien on the

---

[5]     *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.009, 38.001 (Vernon 2015).

[6]     Although D&R and the Rushings discuss Crawford and Mathews, officers of TGE, in their counterclaims, Crawford and Mathews are not named defendants, and no judgment involving them appears in the record.

[7]     Hendry is an owner of TGF.

[8]     Smith, Hendry's father-in-law, has no ownership interest or stated formal position in any of the entities at issue.

7

property was then be held by the new venture, Texas Gulf Fabrication, Inc., of which they would own 81 percent. Further, "in preparation for the [joint] venture," D&R executed "a lease"[9] of the property, the lease payments of which were to cover the monthly amount due on the note. And D&R and the Rushings "never knowingly gave consent" for CSB to purchase the Comerica lien.

D&R and the Rushings further alleged that in the months following the execution of the LOI and lease, they, "[b]ased upon promises" by TGE, TGF, Connolly, Crawford, and Mathews, "ceased their normal business pursuits and started focusing on preparing and handling business for the venture." TGE "hung their sign" at the property, "act[ed] like everything had been done," and "said the money and final paperwork would be forthcoming any day." However, the "final paperwork was never delivered."

One day in December 2012, after D&R and the Rushings had begun "threatening litigation," Penn Rushing was at the property when a locksmith, at Crawford's behest, arrived to change the locks. After Penn was unable to reach Crawford, he began moving personal items off-site. Connolly then informed Michael Rushing that he was "shutting the facility down." According to D&R and the Rushings, "the first time" that they were informed that CSB had foreclosed on

---

[9] The record reflects that D&R executed a "Commercial Lease" with the new entity under the joint venture, "Texas Gulf Fabricat[ion], Inc.," to commence on June 1, 2012 and continue for a term of ten years with a lease payment of $5,000 per month.

8

the property was on January 8, 2012, when Michael Rushing was served with the instant suit.

In regard to its counterclaims for wrongful-foreclosure, D&R[10] alleged that CSB had "wrongfully foreclosed upon the [p]roperty without notice, acceleration, or even making a demand for payment" and "violated" the statutory requirements governing foreclosure proceedings[11] and the terms of the deed of trust. D&R also, on the ground that CSB's title to the property was thus invalid and its subsequent transfer of the property to TGF was void, asserted a claim to quiet title against both CSB and TGF.

In regard to their breach-of-contract counterclaim, D&R and the Rushings argued that the LOI constituted a "binding contract" because it "did not leave any material term open to further negotiation." It included:

> the names of the parties, signatures, effective date of formation, and precise terms including: percentage of ownership ("81% Rushing Family . . . 19% owned by [TGE]"); issuance of shares and compensation ("[TGE] will issue 5,000,000 of [its] common shares in the name of the Joint Venture. These shares will vest over three years from the date of issuance, such date will be as close as reasonably possible to July 21, 2012."); and formation of a managing Board to "consist of three members, appointed for two year terms, two from the Rushing Family and one member appointed by the CEO of [TGE].").

---

[10]    The Rushings non-suited their wrongful-foreclosure claims.

[11]    *See* TEX. PROP. CODE ANN. § 51.002 (Vernon 2014).

9

They further argued that TGE, TGF, and Connolly breached the LOI because they "did not issue the required shares," "pay the Rushings" as agreed; "pay the lease"; or "consummate the managing board." And "[t]herefore, damages can be assessed and recovered by the Rushings."

In regard to their fraud counterclaim, D&R and the Rushings alleged that CSB, TGE, TGF, and Connolly "materially misrepresented that the venture and the July 2012 Binding [LOI] were going to come to fruition and benefit D&R and the Rushings"; "the [n]ote purchase was part of the joint venture and that the lease would cover all note payments"; the "note was to be owned by the joint venture"; and the "note would be owned by the joint venture and not foreclosed." And Smith "orchestrated and directed [CSB, TGE, TGF, and Connolly] to make it happen." These "material representations were false"; CSB, TGE, TGF, and Connolly "knew" that they were "false"; the representations were made "with the intent that they should be acted upon"; and D&R and the Rushings acted in reliance upon them and suffered financial, emotional, and reputational harm, and a loss of revenue and real and personal property.

In regard to their counterclaim for negligent misrepresentation, D&R and the Rushings alleged that TGE, TGF, and Connolly, through conversations, written correspondence, and the LOI, "supplied" "false" information, which they did not "exercise reasonable care or competence in obtaining or communicating." And

10

D&R and the Rushings justifiably relied upon the misrepresentations, which proximately caused their damages.

In regard to their counterclaim for breach of fiduciary duty against TGE, TGF, and Connolly, D&R and the Rushings alleged that both an "informal fiduciary relationship of trust and loyalty developed and existed" between them and, "alternatively, a partnership and/or joint venture relationship developed," from which "'formal' fiduciary duties arose." And TGE, TGF, and Connolly, knowing that they would not actually "provide . . . the benefits and position that had enticed the execution of the binding [LOI] in the first place," "mis[led]" D&R and the Rushings into "devoting their time and skills toward growing" the new venture. These breaches of duty damaged D&R and the Rushings by "depriving them of their property [and] fair compensation for their services."

In regard to their conversion counterclaim, D&R and the Rushings alleged that CSB, TGE, TGF, and Connolly took "for their own use" "personal property and equipment (tools, welding machines, studio equipment, dishes, etc.)" belonging to the Rushings that were located on the property.

In regard to their counterclaim for tortious interference, D&R and the Rushings alleged that Connolly and Hendry "conspired to interfere and make it impossible to make payments due under the [LOI]" and their "willful and intentional actions occurred as they were aware that D&R and the Rushings had

11

executed a Binding [LOI] . . . [and] a 10-year lease . . . for the property." Moreover, TGE "did not make the payments due under the lease in attempt to interfere with the [LOI]."

In regard to their conspiracy counterclaim, D&R and the Rushings alleged that CSB, TGE, TGF, Connolly, Hendry, and Smith "all conspired" to "profit from defrauding [them] by breaching the binding [LOI]," "fraudulently promising that they were going to perform under [it]," and "taking the D&R property and not fulfilling the terms they promised to the Rushing Family."

In regard to their counterclaim for quantum meruit against CSB, TGE, TGF, and Connolly, D&R and the Rushings alleged that "[t]he acts above show that D&R and the Rushings were deprived of their property, business and livelihood," and they sought the "return of their business and property or at least monetary damages equivalent to the loss of services, material and property."

CSB moved for summary judgment on its declaratory judgment action and D&R's counterclaim for wrongful foreclosure, arguing that it was entitled to judgment as a matter of law because "the evidence conclusively established that [it] had complied with the statutory requirements for a non-judicial foreclosure"[12] and the deed of trust. TGF and Hendry joined in CSB's summary-judgment motion, asserting that they were entitled to judgment as a matter of law on D&R's

_____

[12]    *See id.*

claim to quiet title. On August 28, 2014, the trial court granted CSB, TGF, and Hendry summary judgment, dismissing D&R's claims for wrongful foreclosure and to quiet title. The trial court also issued a supplemental order declaring that CSB's foreclosure on the property was "proper, valid and complied with the terms of the Deed of Trust and the laws of the State of Texas" and CSB "held legal title to the [p]roperty."

Next, Lester Smith moved for summary judgment on the ground that there is no evidence to support D&R and the Rushings' claims against him for fraud and conspiracy. On October 31, 2014, the trial court granted "Final Summary Judgment" in favor of Smith, dismissing all of the claims brought against him by D&R and the Rushings. The trial court further awarded Smith $33,250.00 in sanctions against D&R, the Rushings, and their attorney, George W. Gore, for asserting "groundless" claims "in bad faith and for the purpose of harassment."

Next, TGF and Hendry then moved for summary judgment on the ground that there is no evidence to support D&R and the Rushings' claims against them for breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, conversion, conspiracy, tortious interference, and quantum meruit. On November 19, 2014, the trial court granted TGF and Hendry "Final Summary Judgment," dismissing all of D&R and the Rushings' claims against them.

Next, TGE moved for summary judgment on D&R and the Rushings' breach-of-contract counterclaim, arguing that it was entitled to judgment as a matter of law because the LOI did not "meet the elements of a binding contract"; "many material terms [were] missing"; it was "not sufficiently definite to be enforceable"; the "Rushing Family never intended to be bound, or perform, under the Proposal"; and there was "never a meeting of the minds between TGE and Rushing Family." On December 17, 2014, the trial court granted TGE partial summary judgment, holding that the LOI was not a "binding, valid or enforceable contract" and TGE had "no obligation, monetary or otherwise," to the Rushings.

CSB, TGE, and Connolly then moved for summary judgment on D&R and the Rushings' remaining claims against them on the ground that there is no evidence to support the counterclaims. On February 3, 2015, the trial court granted TGE, CSB, and Connolly's no-evidence motions for summary judgment, dismissing all of D&R and the Rushings' remaining counterclaims against each of them.[13]

On April 13, 2015, the trial court issued a "Final Judgment," in which it incorporated all of its prior summary judgments and supplemental orders; held that D&R and the Rushings "take nothing on their claims"; and awarded TGE and CSB their attorney's fees.

---

[13]    TGE and CSB non-suited their conversion claims against D&R and the Rushings.

14

## Summary-Judgment Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins*., 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc*., 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a party has sought summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). If we conclude that the trial court did not err in granting summary judgment under the no-evidence

standard, we need not reach the issue of whether the trial court erred in granting summary judgment as a matter of law. *See Ford Motor Co*., 135 S.W.3d at 600.

To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. A no-evidence summary judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

In a matter-of-law summary-judgment motion, the movant has the burden of establishing that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on

his own claim, he must conclusively prove all essential elements of his cause of action. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). When a defendant moves for a matter-of-law summary judgment, he must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Once the movant meets its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Wrongful Foreclosure and Suit to Quiet Title

In its first issue, D&R[14] argues that the trial court erred in granting CSB summary judgment on CSB's declaratory-judgment action and on D&R's wrongful-foreclosure counterclaim[15] because CSB did not conclusively establish its right to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). D&R further argues that CSB's own summary-judgment evidence establishes that "the foreclosure was improper" because it "failed to comply" with the requirements of the deed of trust and the "statutory requirements governing foreclosure." *See* TEX. PROP. CODE ANN. § 51.002 (Vernon 2014). In its second issue, D&R argues that the trial court erred in granting TGF and Hendry summary judgment on its suit to quiet title because CSB's title was invalid, based on its "improper" foreclosure, and, thus, its subsequent transfer of the property to TGF was void.

To prevail on a wrongful-foreclosure claim, a plaintiff must establish (1) an irregularity in the foreclosure sale that (2) caused it damages. *Univ. Savings, Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982); *Hous. Omni USA Co. v. Southtrust Bank Corp.*, No. 01-07-00433-CV, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, no pet.) (mem. op.). An

---

[14] The Rushings non-suited their wrongful-foreclosure claims.

[15] Although TGF and Hendry had no role in the foreclosure proceeding, they joined in CSB's motion for summary judgment on D&R's wrongful-foreclosure counterclaim because CSB, after foreclosure, sold the property to TGF. Hendry is an owner of TGF.

18

irregularity exists if a trustee does not comply with the statutory prerequisites governing foreclosure and any conditions in the deed of trust. *Hous. Omni USA Co.*, 2009 WL 1161860, at *6; *see also Hous. First Am. Savings v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983); *Nat'l Commerce Bank v. Stiehl*, 866 S.W.2d 706, 708 (Tex. App.—Houston [1st Dist.] 1993, no pet.); *see also* TEX. PROP. CODE ANN. § 51.002.

The deed of trust governing the property provides, in pertinent part, as follows:

> If an event of a default hereunder shall occur, Beneficiary may, at Beneficiary's election and by or through Trustee or otherwise, sell or offer for sale, in one or more sales, all or any part of the Mortgaged Property, . . . . with or without having first taken possession of same, to the highest bidder for cash (or credit on the indebtedness if Beneficiary is the highest bidder) at public auction. Such sale shall be made at the courthouse door of the County wherein the Mortgaged Property . . . is located, on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m. after giving legally adequate written notice of sale of that portion of the Mortgaged Property to be sold, at least twenty-one (21) consecutive days prior to the date of said sale.
>
> . . . .
>
> . . . [S]uch notice and sale may be accomplished in such manner as permitted or required by . . . § 51.002 of the Texas Property Code . . . .

Texas Property Code section 51.002 provides, in pertinent part, as follows:

> (a)    A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month. Except as provided by Subsection (h), the sale must take place at the county courthouse in the county in which the

land is located, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located. . . .

(b)    . . . . [N]otice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

    (1)    posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

    (2)    filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

    (3)    serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

. . . .

(c)    The sale must begin at the time stated in the notice of sale or not later than three hours after that time.

. . . .

(e)    Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

. . . .

TEX. PROP. CODE ANN. § 51.002.

CSB moved for summary judgment[16] on its declaratory-judgment action and D&R's wrongful-foreclosure counterclaim, arguing that it was entitled to judgment as a matter of law because "the evidence conclusively established that CSB

---

[16]    *See* TEX. R. CIV. P. 166a(c).

complied with the requirements of the deed of trust and statutory requirements of a non-judicial foreclosure.[17]  *See id.*  Because its foreclosure on the property was proper and valid, it held legal title to the property.

CSB's summary-judgment evidence reveals that on August 14, 2012, substitute trustee Robert Schlanger posted a "Notice of Substitute Trustee's Sale" at the Harris County Courthouse and filed the "Notice of Substitute Trustee's Sale" in the Office of the Harris County Clerk.  In his affidavit, Schlanger testified that he sent a "Notice of Posting" by certified mail to D&R at the Wade Street property.  In his "Notice of Posting," Schlanger identified himself as the substitute trustee and explained that D&R had, on October 28, 2004, executed a note in the amount of $625,000.00; the note was secured by a deed of trust; the note and deed of trust had been assigned to CSB; D&R previously had been notified that it was in default on the note and had not cured the deficiency; and a foreclosure sale had been set for September 4, 2012.  *See id.* § 51.002(b).  Schlanger listed his and CSB's contact information, and he offered D&R an opportunity to cure the default before the sale.  The "Notice of Posting" indicates that enclosed with it was a copy of the "Notice of Substitute Trustee's Sale."  The "Notice of Substitute Trustee's Sale" states that a foreclosure sale was scheduled to take place at 1:00 p.m. on September 4, 2012, in "the interior area of the first floor lobby" or "covered area

---

[17]  *See* TEX. PROP. CODE ANN. § 51.002.

located outside" the "Family Law Center (a Harris County Courthouse located at 1115 Congress Street, Houston, Texas." *See id.* § 51.002(a), (c). The record includes a return receipt, showing that on August 14, 2012, Schlanger sent a certified mailing to D&R at 6314 Wade Street, Baytown, Texas. *See id.* § 51.002(e) (service of notice under this section complete when "deposited in the United States mail, postage prepaid and addressed to the debtor at the last known address").

CSB's summary-judgment evidence establishes that it complied with the challenged statutory requirements and terms of the deed of trust, which mirrors the statute, in conducting its foreclosure of the property. *See id.* Thus, the burden shifted to D&R to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co.*, 321 S.W.3d at 691.

D&R first argues that there exists a fact issue regarding proper notice because CSB's "only evidence" that notice was sent is Schlanger's affidavit; Schlanger, in his affidavit, identifies "only three pages as being mailed"; and D&R never received the notice.

The affidavit of a person knowledgeable of the facts to the effect that service was completed constitutes prima facie evidence of service. *See* TEX. PROP. CODE ANN. § 51.002(e). And nothing in Schlanger's affidavits, suggests that "only three pages" were mailed. Schlanger testified that he sent a "Notice of Posting." The

22

"Notice of Posting" states that a "Notice of Substitute Trustee's Sale" was attached. Both notices appear together in the summary-judgment record. And CSB was not required to prove that D&R actually received the notices. *See id*.; *Kainer v. ABMC Corp*., No. 01-05-00338-CV, 2006 WL 407794, at *5–6 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (mem. op.).

D&R next asserts that its "evidence of [CSB's] interference with the foreclosure notice's service" is "sufficient to raise an issue of fact to be resolved by a jury." It directs us to the August 8, 2014 affidavit of Penn Rushing, as evidence that TGE allowed the Rushings, who were working at the property at the time, to receive mail for D&R at the property. D&R claims, however, that "[a] defective notice letter was sent in the mail, but TGE personnel working at the [p]roperty refused to sign for the letter and falsely advised the postman that D&R no longer was there." Notably, D&R seems to concede that Schlanger mailed his notice to D&R. *See* TEX. PROP. CODE ANN. § 51.002(e).

Regardless, D&R argues that the summary-judgment evidence indicates that its receipt of the notice of foreclosure was "fraudulently blocked from delivery" by TGE personnel working at the property because CSB's return receipt includes a notation "Attempted – Not Known; Unable to Forward" and, in its own summary-judgment evidence, a "Mailing Standards of the United States Postal Service, Domestic Mail Manual." The Manual states that an endorsement of

23

"Attempted – Not Known" means "Delivery Attempted, addressee not known at place of address."

"The dispositive inquiry under section 51.002(e), however, is not receipt of notice, but, rather, service of notice." *Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at *4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) (mem. op.); *see* TEX. PROP. CODE ANN. § 51.002(e) ("Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. . . ."). Thus, to create a fact issue to defeat CSB's showing of compliance with the notice requirements, D&R had to present evidence that CSB's notices were not "deposited in the mail, by certified mail, postage prepaid, and addressed to [D&R], as stated in the affidavit" of the substitute trustee. *See Adebo*, 2008 WL 2209703, at *4. D&R, in its appellate brief, does not direct us to any evidence on this point.

D&R also argues that there exists a fact issue regarding proper notice because Schlanger was statutorily prohibited from acting as both a "debt collector" and the substitute trustee. *See* TEX. PROP. CODE ANN. §§ 51.0074(b)(1), 51.0075(b) (Vernon 2014). "A trustee may not be . . . assigned a duty under a security instrument other than to exercise the power of sale in accordance with the terms of the security instrument." *Id*. § 51.0074(b)(1). And "[a] trustee or

24

substitute trustee is not a debt collector." *Id.* § 51.0075(b). Nothing in the summary-judgment record suggests that Schlanger was assigned any duty other than to exercise the power of sale in the deed of trust.

D&R further asserts that CSB did not serve the guarantor, Penn Rushing, with notice of foreclosure. To its response, D&R attached the affidavit of Penn Rushing in which he testified that he is "the guarantor on the Note" and was "not sent a notice of foreclosure." However, "[g]uarantors, as opposed to the maker, of a note secured by realty do not enjoy the right to notice of the foreclosure sale under the Property Code's notice provisions." *Bishop v. Nat'l Loan Inv'rs, L.P.*, 915 S.W.2d 241, 245 (Tex. App.—Fort Worth 1995, writ denied) (citing section 51.002). And nothing in the deed of trust required notice to a guarantor. Moreover, in the note, "[e]ach [m]aker, surety, and endorser . . . expressly waive[d] all notices."

Finally, D&R argues that there exists a fact issue regarding the validity of CSB's foreclosure because there is "no amount due" on the loan. CSB's summary-judgment evidence shows that in July 2012, Comerica sold the note to CSB and assigned to CSB its rights under the deed of trust. The loan documents identify CSB and its address, facsimile number, email address, and representative, Connolly. As discussed above, D&R executed in the LSA a "Joinder by Debtor," which states that the "Loan Documents," defined as the deed of trust, assignment

of rents, security agreement, and UCC financing statement, were "valid and enforceable" by CSB against D&R and the "collateral identified therein," i.e., the property. The evidence shows that D&R's loan matured on October 28, 2011 and the outstanding balance on the note was $415,064.47. The deed of trust provides that in the event of a default or "unpaid indebtedness," the grantor, i.e., CSB, may "without demand," "notice of nonpayment," "notice of acceleration," or "any other notice," declare the entire unpaid balance "immediately due" and "shall have the option to proceed with foreclosure in satisfaction of such default."

D&R does not direct us to any evidence that raises a fact issue regarding any irregularities in CSB's foreclosure. *See Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins.*, 128 S.W.3d at 215. Taking as true all evidence favorable to D&R and indulging every reasonable inference and resolving any doubts in its favor, we conclude that CSB has conclusively disproved the existence of an irregularity in the foreclosure sale, an essential element of D&R's wrongful-foreclosure cause of action. *See Cathey*, 900 S.W.2d at 341; *Siegler*, 899 S.W.2d at 197 (Tex. 1995); *Lujan*, 433 S.W.3d at 704.

Accordingly, we hold that the trial court did not err in granting CSB summary judgment on its declaratory-judgment action and D&R's wrongful-foreclosure counterclaim. We further hold that because there is no evidence that CSB's title is invalid, the trial court did not err in granting TGF and Hendry

26

summary judgment on D&R's suit to quiet title. *See Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387–88 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (suit to quiet title relies on invalidity of defendant's claim to property).

We overrule D&R's first and second issues.

## Breach of Contract

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting TGE and Connolly[18] summary judgment against them on their breach-of-contract counterclaim because they presented evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(c), (i).

The essential elements of a breach-of-contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The elements of a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Williams v.*

---

[18] D&R and the Rushings do not challenge the trial court's summary judgment in favor of all the parties on every counterclaim. We address only those counterclaims raised in the appeal.

*Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.). To be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

In determining whether a contract is sufficiently definite to enable a court to determine the parties' obligations and provide a legal remedy, "we must construe the contract as a whole" and "evaluate the overall agreement to determine what purposes the parties had in mind at the time they signed" it. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239–40 (Tex. 2016). "[W]e may neither rewrite the parties' contract nor add to its language." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003)). Nor may we "consider only the parts favoring one party and disregard the remainder." *Id.* "[I]t is a rule universally recognized that if an instrument admits of two constructions, one of which would make it valid and the other invalid, the former must prevail." *Id.* ("Forfeitures are not favored in Texas, and contracts are construed to avoid them."). Thus, if the parties clearly intended to agree and a "reasonably certain basis for granting a remedy" exists, we will conclude that the contract terms are definite enough to provide that remedy. *Id.* When "the actions of the parties . . . show conclusively that they have intended to conclude a binding agreement, even though one or more

terms are missing or are left to be agreed upon[,] . . . courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Id.*

TGE argued that it was entitled to judgment as a matter of law on D&R and the Rushings' breach-of-contract counterclaim because the LOI was not a valid, enforceable agreement. It asserted that the LOI is "silent as to the specific members of the Rushing Family to be parties to the proposed marketing joint venture and the specific duties to be performed by the Rushing Family in return for their compensation." Further the LOI expressly contemplates that it "will be further refined into a comprehensive agreement" in the future. And it is undisputed that the parties did not subsequently enter into the contemplated comprehensive agreement.

TGE's summary-judgment evidence includes a copy of the LOI and excerpts from the depositions of Michael and Penn Rushing. We first note that the LOI does not identify any specific members of the Rushing Family as parties to the agreement, and it makes no mention of any promises or duties owed. An agreement that does not create any reciprocal duties is fatally defective. *See Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 257–58 (Tex. App.—Dallas 2012, pet. denied) ("letter of intent" fatally defective where it created "no specific duties to be performed" in return for $250,000 salary).

29

Further, the LOI states that "[TGE] will deposit $100,000 *on the execution of the definitive agreement*." (Emphasis added.) And "[TGE] will deposit $10,000 per month beginning August 2, 2012 and continuing for twelve months." Again, it is undisputed that "the definitive agreement" was never executed. And the LOI does not state where or to whom TGE was to make any deposits. Although the LOI generally states that "funds are intended for the benefit of the Rushing Family," no specific person is identified. And, again, the LOI, in closing, states that the parties intended for it to "be further refined into [a] comprehensive agreement."

The terms of the LOI are simply not sufficiently definite to enable a court to understand the parties' legal obligations. *See Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied) (contract terms reasonably certain if "they provide a basis for determining the existence of a breach and for giving an appropriate remedy"). Where, as here, "essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *See Corilant Fin., L.P.*, 376 S.W.3d at 256.

Further, Michael Rushing, in his deposition, testified that he did not agree with certain terms of the LOI, i.e., paragraphs one (purpose of the joint venture), four (issuance of shares), and five (commissions), and there were "a lot of material

30

terms" "missing," i.e., "the payoff of [the] IRS debt" and the salaries, benefits, duties, and terms of employment pertaining to him and Penn Rushing, who, as part of the deal, were to be employed by TGF, the entity created under the joint venture. Michael Rushing further testified that the LOI did not constitute a final agreement, as follows:

> Q.   . . . [T]he reason you signed this [LOI] is because you always contemplated that there would be deal documents—
>
> A.   Right
>
> Q.   —down the road.
>
> A.   Right.
>
> Q.   And have you executed any other agreements or contracts?
>
> A.   No, sir.
>
> Q.   Okay.
>
> A.   They're still coming.
>
> Q.   They're still coming?
>
> A.   (Moves head up and down.)
>
> Q.   All right. In other words, the deal is not done yet, right?
>
> A.   That's right.

And Penn Rushing similarly testified:

> Q.   . . . [D]id you think this was the definitive agreement?
>
> A.   I think that this was just a Letter of Intent for Binding [sic] until the lawyers got the—all the stuff draw[n] up. We are still waiting on lawyers at this point to draw up everything.
>
> . . . .
>
> Q.   In other words, this does not embody the entire agreement of the parties?

A. This doesn't have everything listed that they agreed upon with us, no.

Thus, D&R and the Rushings did not accept the LOI in strict compliance with its terms and did not fully consent to its terms. *See Williams*, 264 S.W.3d at 236.

"It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fischer*, 479 S.W.3d at 237. And when, as here, an agreement to make a future agreement is not sufficiently definite as to all of the future agreement's essential and material terms, the agreement to agree is "nugatory." *See id.*

We conclude that TGE met its burden to disprove an essential element of D&R and the Rushings' breach-of-contract counterclaim by establishing that the LOI was not a valid contract. *See Cathey*, 900 S.W.2d at 341. As such, the burden shifted to D&R and the Rushings to present evidence raising a genuine issue of material fact precluding summary judgment. *See id.*

D&R and the Rushings presented, as their summary-judgment evidence on this point, a copy of the LOI; emails regarding mediation; a certificate of formation of TGF; a copy of the lease; a series of email correspondence; and a September 2014 appraisal of the property, stating that the "'as is' value of the fee simple of the property" was $1,448,000. They do not, however, direct us to anything within

32

these materials that constitutes evidence that the LOI constituted a valid contract. *See Beckman*, 305 S.W.3d at 16.

D&R and the Rushings also presented the affidavits of Michael and Penn Rushing. In their affidavits, however, they again, consistent with their deposition testimony above, each stated that "Crawford and Mathews repeatedly promised that the comprehensive agreement would be forthcoming." And Penn Rushing further testified that "[n]o comprehensive agreement was ever presented." Although D&R and the Rushings assert that they changed their positions in reliance on the LOI, the summary-judgment evidence conclusively establishes that the LOI was not a valid contract.

We conclude that D&R and the Rushings did not meet their burden to bring forth evidence raising a genuine issue of material fact precluding summary judgment on their breach-of-contract counterclaim. *See Siegler*, 899 S.W.2d at 197; *Mayes*, 236 S.W.3d at 755 (evidence raises genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all summary-judgment evidence). We further conclude that this same evidence, which D&R and the Rushings also presented in response to Connolly's no-evidence motion for summary judgment on their breach-of-contract counterclaim against him, does not constitute more than a scintilla of evidence raising a genuine issue of material fact

regarding the existence of a valid, enforceable contract. *See* TEX. R. CIV. P. 166a(i); *Ridgway*, 135 S.W.3d at 600.

Accordingly, we hold that the trial court did not err in granting TGE and Connolly summary judgment against D&R and the Rushings on their breach-of-contract counterclaim.

We overrule the portion of D&R and the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their breach-of-contract counterclaim.

## Quantum Meruit

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting CSB, TGE, and Connolly summary judgment against them on their counterclaim for quantum meruit because they presented more than a scintilla of evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

To recover under a quantum meruit theory, a claimant must prove that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt*

*Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Silver Oak Custom Homes, LLC v. Tredway*, No. 01-12-01035-CV, 2013 WL 3522916, at *4–5 (Tex. App.—Houston [1st Dist.] July 11, 2013, no pet.) (mem. op.).

In their summary-judgment motions, CSB, TGE, and Connolly each asserted that there is "no evidence" that D&R or the Rushings "provided valuable services or materials" and any such services or materials were "accepted."

D&R and the Rushings, in their response, asserted that they "expected a lot of compensation for getting involved with [CSB, TGE, and Connolly]." Specifically, "[n]ot only was there immediate cash ($100k never received that was due in 10 days) but there was also supposed to be $34 million in value." D&R and the Rushings also asserted that they provided "services, equipment, and real property"; it is "undisputed that the [p]roperty has been used for the benefit of TGE and Connolly"; and each party was "aware of the LOI and that [D&R and the Rushings] expected compensation." In support of their assertions, D&R and the Rushings direct us to the LOI; the lease; the certificate of formation of TGF; a June 4, 2012 letter from Connolly to Michael Rushing, proposing potential deal structures; and a July 15, 2012 email from Connolly to Mathews, proposing alternative deal structures.

Nothing in D&R and the Rushings' summary-judgment evidence, however, establishes that they rendered "valuable services" or "furnished" "materials" to

35

CSB, TGE, or Connolly. First, no specific services or materials are identified. That D&R and the Rushings expected the bargain of the LOI, which never materialized, cannot form the basis of a quantum meruit claim. *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 895 (Tex. App.—San Antonio 2002, no pet.) ("An expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim."). Further, D&R and the Rushings do not direct us to any authority that supports their assertion that a quantum meruit theory applies to a provision of real property. *See Vortt Expl. Co.*, 787 S.W.2d at 944 (quantum meruit claim requires proof "valuable services were rendered or materials furnished").

Accordingly, we hold that the trial court did not err in granting CSB, TGE, and Connolly summary judgment against D&R and the Rushings on their counterclaim for quantum meruit.

We overrule the portion of D&R and the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their counterclaim for quantum meruit.

### Fraud

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting CSB, TGE, and Connolly summary judgment against them on their fraud counterclaim because they presented more than a scintilla of

evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

To prevail on a fraud claim, a plaintiff must establish that: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party "actively and justifiably" acted in reliance on the representation; and (6) the party thereby suffered injury. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009); *Tredway*, 2013 WL 3522916, at *5.

TGE, CSB, and Connolly each asserted in their summary-judgment motions that there is no evidence of any specific material misrepresentations that they made to D&R or the Rushings. *See Exxon Corp.*, 348 S.W.3d at 217.

D&R and the Rushings presented, as their summary-judgment evidence in support of their fraud claim, TGF's certificate of formation; a copy of the LOI; and a copy of the lease. They also included a June 4, 2012 letter from Connolly to Michael Rushing, in which Connolly outlined the following proposal:

> 6. You [Rushing] would introduce us directly to your banker and we would purchase the note from the bank and then foreclose, thus assuring a clean title; or, alternatively, the bank forecloses and we bid at the foreclosure sale.

37

7.  We will form a marketing joint venture with your family members who do not have any IRS liability. The family brings customers, many years of industry relationships, and sales prospects, and we will bring capital as follows:

    $100,000 in cash, and $1,000,000 in additional capital [explained]

8.  The JV is owned 81% by your family and 19% by TGE.

9.  The JV brings in a minimum of $5 million in sales at any time over the next three years . . . .

    Gentlemen, the upside potential of this *proposal* is significant; already this year the common shares of TGE have traded at a value that would equal $2 million in value for these shares. Additionally, the minimum cash benefit you would see to your family is $220,000. . . . Please present this to your family members asap, so that we can help you maintain your many years of family involvement in this business.

(Emphasis added.) And D&R and the Rushings also included Connolly's June 22, 2012 email to Hendry, in which Connolly summarized the "fabrication plant note purchase":

> Corporate Strategies, LLC,[19] has negotiated the purchase of a defaulted note on a fabrication plant in Baytown in the original amount of $625,000 from [Comerica]. The purchase price of the note is approximately $425,000, and is secured by [the property].
>
> The Business located at the facility today, [D&R], has decided to close. Following the death of the founder and embezzlement of IRS trust funds from payroll by the Company's bookkeeper, the Company is unable to make payments on the first lien note due to [Comerica]. Comerica purchased Sterling Bank, which originated the note in October 2004. While the bookkeeper is now in jail after having been convicted for the theft, as a result of the embezzlement and non-payment of taxes by the D&R employee, the IRS has filed

---

[19]   Connolly is chief executive officer of Corporate Strategies, LLC.

tax liens against the property. These liens are secondary to the Comerica Bank first lien note . . . .

A real estate appraisal has been completed and the current appraised value of the property is $445,000. Additionally, various items of used/junked equipment are spread throughout the 5 acre site on Wade Road. An equipment appraisal was obtained . . . valuing the equipment at $113,000, but our inspection of the equipment has shown it is largely nonfunctional and may well cost more to repair than its current worth. . . .

[TGE] wants to locate their new fabrication subsidiary at the site and is willing to lease it for $5,000 per month on a triple net basis for ten years. TGE will also have the option to buy the real estate from the note holders after they foreclose for $600,000, for one year following the date of signing their lease.

Moreover, D&R included a July 15, 2012 email from Mathews to Connolly. In the email, Mathews explained that he had some concerns about employing Penn and Michael Rushing; wanted to "reshap[e] the deal with the Rushings"; and suggested that they "propose" different terms to the Rushings.

D&R and the Rushings do not identify any specific misrepresentation in their evidence. *See Exxon Corp.*, 348 S.W.3d at 217. "It is not our duty [on appeal] to sua sponte conceive of potential fact issues and then search the appellate record for evidence supporting their existence." *Daniel v. Webb*, 110 S.W.3d 708, 710 (Tex. App.—Amarillo 2003, no pet.); *see also Bich Ngoc Nguyen v. Allstate Ins. Co*., 404 S.W.3d 770, 776–77 (Tex. App.—Dallas 2013, pet. denied) ("In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift through voluminous deposition

39

transcriptions in search of evidence to support the non-movant's argument that a fact issue exists." (internal quotations omitted)); *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("[I]n determining whether a respondent to a no-evidence motion for summary judgment has sufficient evidence to raise a genuine issue of material fact, courts are not required to search the record without guidance." (internal quotations omitted)).

D&R and the Rushings assert that TGE and Connolly "knew the deal could not be performed as offered." However, nothing in D&R and the Rushings' summary-judgment evidence establishes that any specific statement was false when made. *See Exxon Corp.*, 348 S.W.3d at 217. As discussed above, the LOI expressly contemplates a future agreement to be finalized. And the emails demonstrate ongoing attempts to negotiate and structure a deal. That the joint venture was never finalized does not establish that any statements made during the negotiation process were false at the time they were made. A failure to perform, standing alone, constitutes no evidence of intent not to perform. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

We conclude that D&R and the Rushings did not bring forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements of their fraud counterclaim. *See Ridgway*, 135 S.W.3d at 600.

Accordingly, we hold that the trial court did not erred in granting CSB, TGE, and Connolly summary judgment against D&R and the Rushings on their fraud counterclaim.

We overrule the portion of D&R and the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their fraud counterclaim.

## Negligent Misrepresentation

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting TGE and Connolly summary judgment against them on their counterclaim for negligent misrepresentation because they presented more than a scintilla of evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

To prevail on a negligent misrepresentation claim, a plaintiff must demonstrate that the defendant: (1) made a representation in the course of his business, or in a transaction in which he had a pecuniary interest; (2) supplied false information for the guidance of others in their business; (3) did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n. v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Swank v. Sverdlin*, 121 S.W.3d 785, 802 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

The plaintiff must also prove that the defendant misrepresented an "existing" fact in the course of the defendant's business rather than a promise of future conduct. *See Swank*, 121 S.W.3d at 802.

TGE and Connolly each asserted in their summary-judgment motions that there is no evidence that they made a material misrepresentation to D&R or the Rushings. *See Sloane*, 825 S.W.2d at 442. In their response, D&R and the Rushings asserted that Connolly "proposed deal points that were not possible and were clearly nothing but an incentive for [D&R] to deal with [TGE and CSB]." On appeal, D&R and the Rushings, in support of their argument that they raised a genuine issue of material fact on each element of their claim for negligent misrepresentation, rely on the LOI and June 4, 2012 letter from Connolly to Michael Rushing. Again, as discussed above, nothing in the LOI or the June 4, 2012 letter establishes the falsity of any statements. *See id*.

Accordingly, we hold that the trial court did not err in granting TGE and Connolly summary judgment against D&R and the Rushings on their counterclaim for negligent misrepresentation.

We overrule the portion of D&R and the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their counterclaim for negligent misrepresentation.

**Tortious Interference**

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting TGE, Connolly, and Hendry[20] summary judgment against them on their counterclaim for tortious interference because they presented more than a scintilla of evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

To prevail on a claim for tortious interference with an existing contract, a plaintiff must show that (1) a contract existed that was subject to the defendants' interference; (2) the defendants willfully and intentionally committed acts of interference; (3) the defendants' acts proximately caused damages; and (4) actual damages or loss occurred. *Browning—Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993); *Rodarte v. Investeco Grp*., LLC, 299 S.W.3d 400, 411 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Tredway*, 2013 WL 3522916, at *6.

Connolly and Hendry, in their summary-judgment motions, argued that they were entitled to judgment against D&R and the Rushings because there was "no evidence" of a valid contract subject to interference; no evidence that they willfully or intentionally interfered with any contract; and no evidence that they were the proximate cause of any damages. *See Reyna*, 865 S.W.2d at 926.

---

[20]  D&R and the Rushings assert on appeal that CSB tortiously interfered with the lease. However, their live petition does not reflect that they sued CSB on this counterclaim.

43

In their summary-judgment response, D&R and the Rushings asserted that TGE, Connolly, and Hendry knew that they were "joint venture partners" with TGE and "had a lease." Connolly and Hendry interfered with the LOI by causing it to "never be materialized as promised" and interfered with the lease by "causing no payments" to be made. And Hendry's "offer to purchase the [p]roperty induced TGE to breach the Binding [LOI] and breach the lease."

As their summary-judgment evidence on this point, D&R and the Rushings direct us generally to the November 7, 2014 affidavit of Michael Rushing; the LOI; the lease; a TGF stock redemption agreement executed by CSB; TGE's motion for leave to designate CSB, Connolly, Crawford, and others as responsible third parties; a July 15, 2012 email from Mathews to Connolly, in which Mathews opines that actually employing Michael and Penn Rushing will be problematic and suggests various alternative deal structures that TGE could offer the Rushings; and a July 24, 2012 email from Connolly to Mathews, stating that CSB's foreclosure on the property was moving forward.

As discussed above, the LOI was not a valid contract. Thus, it was not a contract "subject to interference." *See id*. In regard to the lease, which states that it was executed between D&R and the new venture that never materialized, D&R and the Rushings do not direct us to any evidence that TGE, CSB, Connolly, or Hendry committed any specific "act of interference." *Cf. Manautou v. Ebby*

44

*Halliday Real Estate, Inc.*, No. 05-13-01035-CV, 2015 WL 870215, at *3 (Tex. App.—Dallas Feb. 27, 2015, pet. denied) (mem. op.) ("When a trial court grants a no-evidence motion for summary judgment, in order to adequately challenge on appeal each possible ground for summary judgment, an appellant must cite the specific evidence in the record that it relied upon to defeat the motion and describe why that evidence raised a fact issue."); *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) ("An appellant has a duty to show that the record supports her contentions."); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 868 (Tex. App.—Houston [1st Dist.] 1999), *aff'd*, 73 S.W.3d 193 (Tex. 2002) ("general" assertions of existence of "genuine issues of material fact" inadequate).

Accordingly, we hold that the trial court did not err in granting TGE, Connolly, and Hendry summary judgment against D&R and the Rushings on their counterclaim for tortious interference.

We overrule the portion of D&R and the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their counterclaim for tortious interference.

**Breach of Fiduciary Duty**

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting TGE and Connolly summary judgment against them on

45

their counterclaim for breach of fiduciary duty because they presented more than a scintilla of evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

To prevail on their counterclaim for breach of fiduciary duty, D&R and the Rushings were required to show: (1) a fiduciary relationship with TGE, TGF, and Connolly; (2) a breach of fiduciary duty by TGE, TGF, and Connolly; and (3) that such breach resulted in injury to D&R and the Rushings or in a benefit to TGE, TGF, and Connolly. *See Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also Stauder v. Nichols*, No. 01-08-00773-CV, 2010 WL 2306385, at *7 (Tex. App.—Houston [1st Dist.] June 10, 2010, no pet.) (mem. op.).

D&R and the Rushings alleged in their counterclaim that "an informal fiduciary relationship of trust and loyalty developed and existed" between them and TGE and Connolly. Further, a "partnership and/or joint venture relationship developed . . . involving the creation and operations" of the joint venture, "from which 'formal' fiduciary duties arose." And TGE and Connolly breached their fiduciary duties to D&R and the Rushings by "misleading them into devoting their time and skill" toward the joint venture, while knowing that D&R and the Rushings would not be provided "the benefits and position that had enticed execution of the [LOI] in the first place." D&R and the Rushings asserted that

46

such breaches deprived them of their property and fair compensation for their services," while allowing TGE "to profit greatly."

TGE and Connolly, in their motions for summary judgment, asserted that there is no evidence of a fiduciary relationship between them and D&R or the Rushings.

As their evidence on this point, D&R and the Rushings generally direct us to "affidavits," without identifying any specific affidavit or testimony, and Mathews's July 15, 2012 email to Connolly, in which Mathews proposed various alternative deal structures to present to the Rushings, without identifying any specific language that raises a fact issue concerning the existence of a fiduciary relationship. *Cf. Manautou*, 2015 WL 870215, at *3 (appellant must cite specific evidence in record that it relied upon to defeat the motion and describe why that evidence raised fact issue); *Blake*, 123 S.W.3d at 525 ("An appellant has a duty to show that the record supports her contentions."); *Brewer*, 7 S.W.3d at 868 ("general" assertions of existence of "genuine issues of material fact" inadequate).

Accordingly, we hold that the trial court did not err in granting TGE and Connolly summary judgment against D&R and the Rushings on its counterclaim for breach of fiduciary duty.

We overrule the portion of D&R and the Rushings' fifth issue, in which they challenge the trial court's rendition of summary judgment on their counterclaim for breach of fiduciary duty.

## Conversion

In a portion of their fifth issue, the Rushings[21] argue that the trial court erred in granting CSB, TGE, TGF, and Connolly summary judgment against them on their conversion counterclaim because they presented more than a scintilla of evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of or inconsistent with the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Conversion may be committed against one who has legal possession regardless of the question of title. *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex. App.—Dallas 2003, pet. denied). A conversion defendant must intend to assert some right in the property. *Id.* at 40. To prevail on a conversion claim, a plaintiff must establish that it (1) owned, had legal possession, or was entitled to possession of property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner to

---

[21] D&R does not appeal this issue.

48

the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the property. *Automek, Inc. v. Orandy*, 105 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *MSMTBR, Inc v. Mid-Atl. Fin. Co.*, No. 01-12-00501-CV, 2014 WL 3697736, at *9 (Tex. App.—Houston [1st Dist.] July 24, 2014, no pet.) (mem. op.).

CSB, TGE, TGF, and Connolly moved for summary judgment on the ground that there is no evidence that the Rushings owned, possessed, or had a right to immediate possession of personal property, that CSB, TGE, TGF, or Connolly wrongfully exercised dominion and control over such personal property, and that the Rushings suffered injury as a result.

In their response, the Rushings argued that because only D&R signed the deed of trust, and, thus, it covered only the personal property of D&R, it did not cover the "equipment, personal items and various other items" of personal property belonging to Michael, Penn, and Florence Rushing. In support of their argument, the Rushings point only to the affidavit of Michael Rushing, who testified, in pertinent part, as follows:

6.      . . . I had personal property, including tools, a paint booth and other equipment at the facility and it has never been returned.

. . . .

9.      Through the years, I placed personal property at the facility as well as property that belongs to my company, Michael Rushing Construction. This property includes all kinds of equipment, hand tools, power tools, and many other items.

49

10. A partial list of the items that belong to my company include *item numbers 1–4, 6, 8, 17 and more* from the Agreed Temporary Injunction entered in this matter on February 8, 2013. In addition, Exhibit D[22] attached to Plaintiffs' Application for TRO identifies many items that belong to my company including those listed above.

11. *I was allowed to obtain possession of part of my property located at the [property]. However, I was not allowed to pick up any of my property that was being used in connection with operations.* In addition, even though property was identified and the parties agreed it was Rushing property that did not belong to D&R . . . or Plaintiffs, and that I could remove the property pursuant to the injunction in place in this case, [Crawford] refused to allow me further entry to the [property] to actually pick up the property.

(Emphasis added.)

In its January 28, 2013 temporary injunction, the trial court ordered the Rushings to return twenty-five pieces of equipment and machinery that it found had been removed from the property by the Rushings. Items numbered 1–4, 6, 8, and 17 consisted of welding machines, plasma arc machines, and a lathe. Nothing in the trial court's order identifies the equipment as the Rushings' personal property. And the Rushings presented only Michael Rushing's bare assertion in his affidavit that some of the items listed in the trial court's order belong to him personally. *See Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (conclusory affidavits not sufficient to raise fact issues because not credible or susceptible to being readily controverted). In sum, the Rushings did not present

_____

22 "Exhibit D" to "Plaintiffs Application for TRO" was not made part of the appellate record.

50

any evidence that they owned, had legal possession, or were entitled to possession of any specific piece of property. *See Orandy*, 105 S.W.3d at 63.

Accordingly, we hold that the trial court did not err in granting CSB, TGE, TGF, and Connolly summary judgment against the Rushings on their conversion counterclaim.

We overrule the portion of the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their conversion counterclaim.

## Conspiracy

In a portion of their fifth issue, D&R and the Rushings argue that the trial court erred in granting CSB, TGE, and Connolly summary judgment against them on their conspiracy counterclaim because they presented more than a scintilla of evidence raising a genuine issue of material fact on each element of the claim. *See* TEX. R. CIV. P. 166a(i).

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The essential elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the

proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983); *Miller*, 229 S.W.3d at 381. Independent liability for civil conspiracy does not exist. *Miller*, 229 S.W.3d at 381. Civil conspiracy is considered a derivative tort because a defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *Miller*, 229 S.W.3d at 381. Thus, to prevail on a civil conspiracy claim, a plaintiff must show that the defendant was liable for some underlying tort. *See Trammell Crow Co.* No. 60 v. *Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997); *Tilton*, 925 S.W.2d at 681; *Miller*, 229 S.W.3d at 381.

Having concluded above that the trial court did not err in rendering its summary judgments in favor of CSB, TGE, and Connolly on each of the alleged underlying torts, we hold that the trial court did not err in granting summary judgment in their favor on D&R and the Rushings' conspiracy claim. *See Ortiz v. Collins*, 203 S.W.3d 414, 422–23 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Harkinson*, 944 S.W.2d at 635.

We overrule the remaining portion of D&R and the Rushings' fifth issue in which they challenge the trial court's rendition of summary judgment on their conspiracy counterclaim.

## Scope of Relief

In their third issue, D&R and the Rushings argue that the trial court erred in rendering its final judgment because it "ignored at least one cause of action" and "exceed[ed] the relief requested in the [previous] summary judgment motions." They assert that the "multiple summary judgment motions" by TGE, TGF, and Connolly "fail[ed] to address the[ir] promissory estoppel claims" raised in their third amended petition, as follows:

> ### Quantum Meruit
>
> The acts above show that D&R and the Rushings were deprived of their property, business and livelihood due to the actions and promises of ... TGE, [TGF], [Connolly], and CSB. Under quantum meruit and *promissory estoppel*, D&R and Rushings seek the return of their business and property or at least monetary damages equivalent to the loss of services, material and property.

(Emphasis added).

Generally, summary judgments may only be granted upon grounds expressly asserted in a summary-judgment motion. *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). A judgment that grants more relief than requested is subject to reversal and remand. *Lehmann v. Har–Con Corp*., 39 S.W.3d 191, 202 (Tex. 2001) ("If the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed.").

Promissory estoppel is not an independent cause of action, but a defensive doctrine that estops a promisor from denying the enforceability of a promise.

*Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). It applies where "there is a promise that the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Harkinson*, 944 S.W.2d at 636.

As a threshold matter, however, a "plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty," without resorting to information another source, "the elements of the plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment." *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979); *see also* TEX. R. CIV. P. 47(a); *Fairdale Ltd. v. Sellers*, 651 S.W.2d 725, 725 (Tex. 1982). Here, merely including the words "promissory estoppel" in the middle of an unrelated claim did not sufficiently state a cause of action for promissory estoppel. Petitions are to be construed liberally in favor of the pleader; however, "liberally does not require a court to read into a petition what is plainly not there." *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000) (if no special exceptions filed, courts should construe pleadings liberally in favor of pleader); *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 199 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

D&R and the Rushings further argue that the trial court erred in entering its final judgment because it did not address their claim for "breach of the lease agreement." They do not, however, direct us to any point in the record in which they asserted such a claim.

We overrule D&R and the Rushings' third issue.

## Discovery

In their fourth issue, D&R and the Rushings argue that the trial court erred in granting summary judgment before an adequate time for discovery had passed and without first "compel[ling] discovery responses."[23] They assert that "at the time the summary judgment motions were filed, parties were still well in the discovery period[,] which did not expire until 2015"; although they "timely sought to compel discovery," the trial court "refused to rule"; "docket control orders were in place prohibiting discovery for most of the case"; and "discovery was delayed" because "multiple parties" were "not served."

D&R and the Rushings do not direct us to any record references in support of their issue, and they do not cite any authority in support of their argument. Accordingly, we hold that this issue is inadequately briefed and, thus, waived. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain "a clear and concise argument for

---

[23] Although D&R and the Rushings, in their brief, state this issue as a challenge to the trial court's rendition of a "temporary injunction," the trial court's temporary injunction is not at issue in this appeal.

the contentions made, with appropriate citations to authorities and to the record"); *Fredonia State Bank v. Gen. Am. Life Ins. Co*., 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that inadequate briefing waives issue on appeal).

## Attorneys' Fees

In their seventh issue, D&R and the Rushings argue that the trial court erred in awarding attorneys' fees to TGE and CSB because it did so "without proper segregation or support and which contradicts case law requiring trial on whether the attorney's fees are reasonable and necessary." They assert that the issue of whether attorney's fees are reasonable and necessary must be submitted to a jury.

In its final judgment, the trial court awarded CSB attorney's fees in the amount of $81,924.55 against the Rushings and D&R, jointly and severally. It also awarded TGE attorney's fees in the amount of $94,376.06 against the Rushings and D&R, jointly and severally. And it awarded TGE and CSB against the Rushings and D&R, jointly and severally, attorney's fees in the amount of $50,000.00 in the event of an appeal to a court of appeals, $25,000.00 in the event of a petition for review to the Texas Supreme Court, $15,000.00 in the event the petition for review is granted and briefing required, and $10,000.00 for representation through oral argument.

The Uniform Declaratory Judgment Act ("UDJA") "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 706 (Tex. App.–Houston [1st Dist.] 2007, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2015) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Because the grant or denial of attorney's fees is within the sound discretion of the trial court, its judgment will not be disturbed on appeal in the absence of a clear showing that it abused its discretion. *Oake v. Collin Cty.*, 692 S.W.2d 454, 455 (Tex. 1985); *Indian Beach Prop.*, 222 S.W.3d at 706. A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Indian Beach Prop.*, 222 S.W.3d at 706. A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Bocquet*, 972 S.W.2d at 21; *Indian Beach*, 222 S.W.3d at 706. Here, because the trial court did not state the basis for its grant of attorney's fees, we may uphold its ruling on any basis supported by the evidence.

*Beard v. Endeavor Nat. Gas, L.P.*, No. 01-08-00180-CV, 2008 WL 5392026, at *8 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, pet. denied) (mem. op.).

When a movant includes a prayer for attorney's fees in its summary-judgment motion, an attached affidavit constitutes testimony that may be considered proof of the attorney's fees incurred. *Petrello v. Prucka*, 415 S.W.3d 420, 431 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 423 (Tex. App.—Fort Worth 2011, pet. denied). To create a fact issue, the nonmovant must, no later than thirty days after it "receives a copy of the affidavit," file a counter-affidavit contesting the reasonableness of the attorney's fees claim of the movant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b), (e) (Vernon 2015). Unless a controverting affidavit is timely served, "an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." *Id.* § 18.001(b); *see Petrello*, 415 S.W.3d at 431 (unless controverting affidavit filed, attorney's fees stated in affidavit presumed reasonable and necessary).

On February 6, 2015, TGE and CSB served D&R and the Rushings with the affidavit of counsel for TGE and CSB, Adam L. Tepper. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001. Tepper testified that in January 2013, his firm began

providing legal services to TGE and CSB in connection with this case; an itemized statement of services and the charges for those services was attached and part of his affidavit; the "services provided by [his firm] for the services, was reasonable at the time and place that the services were provided"; and, as of November 30, 2015, the amount of $422,022.02 charged by his firm to TGE and CSB in prosecution and defense of the claims in this matter was reasonable and necessary.

On March 6, 2015, TGE and CSB moved for a summary judgment on their request for attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. In support of their motion, TGE and CSB attached the affidavits of their counsel, Tepper and Gary M. Jewell, and their fee invoices from January 2013 to November 2014. Jewell, in his affidavit, testified at length regarding the factors underlying the requested attorney's fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (factors pertaining to reasonableness and necessity of attorney's fees). He opined that the attorney's fees requested were usual and customary for handling cases of this type in Harris County and the time incurred was reasonable and necessary. And "[a]t least $176,300.61 is a reasonable attorney's fee award in prosecuting both TGE and CS[B]'s suits for declaratory relief in this case based on the time and labor required."

D&R and the Rushings did not file a controverting affidavit, challenging TGE and CSB's asserted attorney's fees as unreasonable or unnecessary. *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 18.001(b); *Petrello*, 415 S.W.3d at 431 (unless controverting affidavit filed, attorney's fees stated in affidavit presumed reasonable and necessary); *Merch. Ctr., Inc. v. WNS, Inc*., 85 S.W.3d 389, 397 (Tex. App.—Texarkana 2002, no pet.) (although reasonableness of attorney's fees under Declaratory Judgment Act presents fact question, clear, direct, and uncontroverted evidence of fees taken as true as matter of law where such evidence not rebutted).

Further, D&R and the Rushings, in their summary-judgment response, did not offer any evidence to create a fact issue. Rather, they asserted that the issue of the reasonableness and necessity of attorney's fees must be submitted to a jury. In support of their assertion, they rely on *Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998). In *Bocquet*, the Texas Supreme Court noted that the issue of whether attorney's fees are reasonable is "generally" a "question of fact for the jury's determination." *Id.* at 21. This Court has previously held, however, that when a trial court decides a case as a matter of law, as here, a party's uncontroverted affidavit establishes as the reasonable amount of attorney's fees as a matter of law. *Petrello*, 415 S.W.3d at 431 & n.2 ("While attorney's fees are an issue for the jury in cases in which the jury is the factfinder, an affidavit can establish the reasonableness of attorney's fees for summary judgment purposes." (citing *Bocquet*, 972 S.W.2d at 21)); *Hunsucker v. Fustok*, 238 S.W.3d 421, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

When, as here, no controverting affidavit has been filed, no fact issue is raised, and the trial court may grant summary judgment on the amount of attorney's fees asserted by the movant. *Petrello*, 415 S.W.3d at 431–32; *see also Hunsucker*, 238 S.W.3d at 432 (trial court erred in not awarding fees after party submitted uncontroverted affidavit establishing reasonableness of fees).

D&R and the Rushings next argue, as they did in their summary-judgment response, that the trial court erred in awarding TGE and CSB attorney's fees because the fees were not segregated between claims for which they were recoverable and unrecoverable.

Because "Texas law [does] not allow[] for recovery of attorney's fees unless authorized by statute or contract," attorney's fee claimants "have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Id.* at 312–13; *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The party seeking to recover attorney's fees carries the burden of demonstrating that fee segregation is not required. *See Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

"[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Chapa*, 212 S.W.3d at 313. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*. at 313–14. For example, the court in *Chapa*, noted that where segregation is required, attorneys are not required to "keep separate time records when they draft[] the fraud, contract, or DTPA paragraphs of [a] petition." *Id*. at 314. Rather, "an opinion [will] suffice[] stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim. *Id*.; *7979 Airport Garage, L.L.C. v. Dollar Rent-a-Car Sys., Inc.*, 245 S.W.3d 488, 506 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Here, as discussed above, TGE and CSB asserted only their declaratory-judgment actions; the trial court ruled in their favor; and they were entitled to recover their attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Their summary-judgment evidence includes the itemized invoices listing the fees that they incurred and the affidavit of Jewell, in which he segregated the attorney's fees attributed to prosecuting TGE and CSB's declaratory-judgment actions from the fees incurred in defending them from D&R and the Rushings' counterclaims. Jewell testified that "reasonable attorney's fees in this matter to

62

prosecute TGE and CS[B]'s respective declaratory judg[]ment actions, while defending them . . . from the counterclaims of [the Rushings and D&R] from the inception of the lawsuit through entry of final judgment is well over $444,000" and "at least $176,300.61 is a reasonable attorney's fee award in prosecuting both TGE and CS[B]'s suits for declaratory relief in this case based on the time and labor required." Specifically,

> after conservatively segregating the amount of fees attributable [to] TGE and CS[B]'s separate requests for declaratory relief, the respective fees are as follows:
>
> a. $94,376.06 in reasonable and necessary attorney's fees attributable to the prosecution of TGE's suit for declaratory relief on the issue pertaining to the enforceability of the "Letter of Intent"; and
>
> b. $81,924.55 in reasonable and necessary attorney's fees attributable to the prosecution of CS[B]'s suit for declaratory relief on the issue pertaining to the foreclosure of the subject property.

We conclude that TGE and CSB, notwithstanding whether they were so required, did segregate their attorney's fees attributable to their declaratory-judgment actions. *See Chapa*, 212 S.W.3d 299, 310–11; *see, e.g.*, *Petro-Hunt, L.L.C. v. Wapiti Energy, L.L.C.*, No. 01-10-01030-CV, 2012 WL 761144, at *11 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, pet. denied) (mem. op.). Accordingly, we hold that the trial court did not err in awarding TGE and CSB their attorney's fees.

We overrule D&R and the Rushings' seventh issue.

**Sanctions**

In their sixth issue, D&R and the Rushings argue that the trial court erred in granting Smith's motion for sanctions against them because "there is a good-faith argument to extend existing law" and, thus, their pleading against Smith was not "groundless." They assert that "conspiracy to commit fraud should apply to a puppet master who, while not directly committing fraud, directed the actions of others who did and profited from it." They further assert that the sanctions awarded are "excessive" and based on insufficient evidence.

We review a trial court's imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion in imposing sanctions if it acts "without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id*. We presume that pleadings are filed in good faith, and the party seeking sanctions bears the burden of overcoming this presumption. *Id*. In reviewing a sanctions order, we review the entire record to determine whether the trial court abused its discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006).

The signatures of attorneys or parties "constitute a certificate by them" that they have read their pleadings, motions, or other papers, and, to the best of their knowledge, information, and belief formed after reasonable inquiry, "the instrument is not groundless and brought in bad faith or groundless and brought for

the purpose of harassment." TEX. R. CIV. P. 13. A pleading is "groundless" when it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* Bad faith is more than bad judgment or negligence. *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.); *Campos v. Ysleta Gen. Hosp. Inc.*, 879 S.W.2d 67, 71 (Tex. App.—El Paso 1994, writ denied). To show bad faith, the moving party must present evidence of conscious wrongdoing for a dishonest, discriminatory, or malicious purpose. *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

If a pleading, motion, or "other paper" violates rule 13, the trial court "shall impose an appropriate sanction" under rule 215, "upon the person who signed [the pleading, motion, or other paper], a represented party, or both." *Id.* Sanctions may include court costs, litigation expenses, and "reasonable expenses, including attorney fees." TEX. R. CIV. P. 215.2(b).

Texas Civil Practice and Remedies Code chapter 10 provides an alternative basis upon which a court may impose sanctions. *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 10 (Vernon 2015). It provides that the signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1)     the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needlessly increase in the cost of litigation;

(2)     each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)     each allegation or other factual contention in the pleading or motion had evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     each denial in the pleading or motion of a factual contention is warranted on the evidence or, or for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (Vernon 2015).

Upon a violation of section 10.001, a party may file a motion for sanctions, describing the conduct. *Id*. § 10.002(a) (Vernon 2015). If a trial court grants a party's motion for sanctions, it may award "reasonable expenses and attorney's fees incurred in presenting or opposing the motion." *Id*. § 10.002(c) (Vernon 2015). If no due diligence is shown, "the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." *Id*. The sanction may be imposed against the person who "signed a pleading or motion in violation of [s]ection 10.001 . . . , a party represented by the person, or both." *Id*. § 10.004(a) (Vernon 2015).

Here, Smith, in his motion for sanctions, asserted that on December 4, 2013, D&R and the Rushings sued him for fraud and conspiracy. And Smith moved to

dismiss the claims as meritless. D&R and the Rushings, in their response to Smith's motion to dismiss, asserted to the trial court that they "had been provided with documents verifying the assertions contained in their petition regarding [Smith]"; it was "clear" that Smith was "involved"; he was "a primary actor for which his cohorts performed"; and "he would benefit from their dealings."

However, Penn Rushing, in his deposition, testifying on behalf of himself and D&R, admitted that Smith "made no representations" to him or to D&R. And Michael Rushing, in his deposition, admitted that he had never met or spoken with Smith, and had sued him only because his name was mentioned in a meeting. Notwithstanding this testimony, D&R and the Rushings *then* filed their third amended counterclaims, in which they continued to allege that Smith had made the same misrepresentations. Smith asserted that sanctions, in the form of reimbursing his attorney's fees, were appropriate and he had incurred at least $48,477.50 in reasonable and necessary attorney's fees to defend against D&R and the Rushings' claims.

In their response to Smith's motion for sanctions, D&R and the Rushings asserted that the evidence shows that Smith "set[] a meeting at [his] house with other bad actors in this matter"; he agreed in a recorded statement to employing unnamed persons in exchange for a "release"; and the property is now owned by TGF, "which belongs to Hendry and *possibly* Smith." (Emphasis added.)

67

At a hearing on Smith's motion for sanctions, Penn Rushing testified that "Smith never talked to me in his life." Michael Rushing testified that Smith had never made any representations to him, and he admitted that he knew this fact in December 2013, when D&R and the Rushings filed their lawsuit against Smith. He further testified that he had informed his counsel, Gore, of this fact and the only reason that he sued Smith was because someone else had mentioned his name in a meeting. And although he knew that Smith had never spoken to him and would have to hire attorneys and incur legal expenses, Michael Rushing moved forward with his claim that Smith had made fraudulent representations. Further, Gore testified that he sued Smith in order to "br[ing] him in and investigate" and see if "maybe [he] [could] come up with some cause of action."

Cody Stafford, an associate at Dobrowski, Larkin & Johnson, testified that Smith had retained his firm to represent him against D&R and the Rushings in their claims against him. Stafford explained the work performed on behalf of Smith, and he stated that the amount of attorney's fees attributable to that work was $33,250.00.

After the hearing, the trial court found that D&R and the Rushings "brought groundless claims against [Smith]"; such "claims were brought in bad faith and for the purpose of harassment"; their "attorney, George W. Gore, failed to conduct a reasonable inquiry into the facts before filing claims against [Smith]"; and D&R,

the Rushings, and Gore "acted in bad faith by filing . . . [their] Third Amended Claims after being put on notice by the depositions of Penn Rushing and Michael Rushing that the claims asserted against [Smith] were groundless." Based on these findings, the trial court ordered that D&R, the Rushings, and Gore, jointly and severally, pay Smith $33,250.00 "as a sanction."

D&R and the Rushings complain on appeal that "while not directly committing fraud," "it seems that a puppet master should have liability," and "there is a good-faith argument to extend existing law." This complaint, however, does not comport with the complaint that they presented to the trial court. Because they did not present to the trial court the complaint they now raise, we hold that this portion of their issue is not preserved for our review. *See* TEX. R. APP. P. 33.1; *Wolfahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

D&R and the Rushings also argue that the trial court's award of attorney's fees to Smith as a sanction must be set aside because he presented his evidence of attorney's fees after he "rested [his] case," and, thus, there is "no evidence" in support of his attorney's fees. "When attorney's fees are assessed as sanctions, no proof of necessity or reasonableness is required." *Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex. App.—Houston [1st Dist.] 1994), writ denied); *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied). The Texas Supreme

Court has expressly held that the amount of attorney's fees awarded as sanctions under rule 215 is "solely within the sound discretion of the trial judge, only to be set aside upon a showing of clear abuse of that discretion." *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984); *see also* TEX. R. CIV. P. 215.

D&R and the Rushings further assert that "the testimony presented on attorney's fees was for Hendry and Smith together" and there is "no evidence of apportionment." The record shows, however, that Stafford testified that his firm had "invoiced" Smith and Hendry $65,397.93 for legal services in this case. And, of this amount, $33,250.00 is solely related to D&R and the Rushings' allegations against Smith.

Accordingly, we hold that the trial court did not abuse its discretion in awarding Smith $33,250 as a sanction against D&R and the Rushings. *See* TEX. CIV. PRAC. & REM. CODE ANN § 10.002(c), 10.004(a); TEX. R. CIV. P. 13.

We overrule D&R and the Rushings' sixth issue.

**Conclusion**

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.